CATHARINE L. BEEKMAN et al., Respondents, *v.* THE THIRD AVENUE RAILROAD COMPANY, Appellant.

1. STREET SURFACE RAILROADS — NEW YORK CITY — SALE OF FRANCHISE FOR EXTENSIONS. The common council of the city of New York cannot, under section 93 of the Railroad Law (L. 1890, ch. 565, as amended by L. 1892, chs. 306, 676, and L. 1893, ch. 434), make a valid sale of more than one extension of an existing street surface railroad at the same sale, to be struck off upon one bid, when the extensions are separated from each other in such a way that they can only be operated together over the line of the existing railroad.

2. CONNECTION OF EXTENSIONS BY USE OF EXISTING RAILROAD LINE. Two extensions of an existing street surface railroad are not to be deemed to constitute but one extension and franchise, and so legally subject to sale at one bid, because they are to be connected by an intermediate section of the main line of the applicant and there is included in the sale by the common council a consent of the applicant that in case any other corporation becomes the purchaser of the extensions it shall have the right in perpetuity to use the connecting tracks; and a sale of such extensions by the common council to the applicant at the same sale and on one bid does not vest in it the right to build the extensions.

3. CONDITION OF SALE — CASH PAYMENT IN ADDITION TO PERCENTAGE. The common council has no power to impose as a condition of its consent to the sale of an extension or extensions of an existing street surface railroad, that such railroad, if a purchaser, shall pay into the city treasury a sum of money in cash, within a certain time after the right to build the extension has been struck off to it, in addition to the percentage of gross receipts bid by it upon such sale.

4. OFFER BY APPLICANT OF PAYMENT IN ADDITION TO PERCENTAGE. The want of power in the common council to impose the payment of a cash sum as a condition of the sale of extensions of an existing railroad is not cured by the offer of the applicant to pay such sum in addition to the percentage of gross receipts bid by it; and such offer does not validate a sale to the applicant under such condition or entitle such sale to vest in the applicant a right to build the extensions.

5. CONDITION AS TO RATE OF FARE. A condition in the resolutions of the common council authorizing the sale of an extension of an existing railroad, that "No passenger shall be charged more than five cents for a continuous ride from or to the above branch or extension," together with a provision that "All laws or ordinances now in force, or which may be modified or adopted, affecting the surface railroads operating in this city shall be strictly complied with, and especially article IV of the General Railroad Law," is a substantial compliance with that portion of section 93

of the statute which directs that but one fare shall be exacted for passage over such branch or extension and over the line of the railroad which shall have applied therefor.

6. INVALID SALE OF FRANCHISE FOR EXTENSIONS. Although the above condition as to fare is a compliance with the statute, a sale, under the resolutions containing it, of extensions of an existing railroad to the company owning such road is invalid and does not vest in such company the right to build the extensions, where the sale includes several franchises in one group and is subject to the condition of payment of a gross sum, in addition to percentage upon receipts.

*Beekman* v. *Third Ave. R. R. Co.*, 13 App. Div. 279, affirmed.

(Argued April 23, 1897; decided June 8, 1897.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 25, 1897, which modified, and, as so modified, affirmed an order made at Special Term granting an injunction against the defendant *pendente lite.*

The nature of the action, the questions certified for review and the facts, so far as material, are stated in the opinion.

*William H. Page, Jr., Francis M. Scott* and *William C. Trull* for appellant. The sale, even under the construction placed upon the Railroad Law by the respondents and by the Appellate Division, was of a franchise to construct and operate an entire and connected railroad and not a sale of separated extensions or branches. The first question certified should, therefore, be answered in the affirmative. (*People ex rel.* v. *Barnard*, 110 N. Y. 548; *People* v. *O'Brien*, 111 N. Y. 1; *Adamson* v. *N. El. R. R. Co.*, 89 Hun, 261; *Ziegler* v. *Chapin*, 126 N. Y. 342; L. 1893, ch. 434, § 93; *S. B. R. R. Co.* v. *M. R. R. Co.*, 121 Mass. 485; *W. P. R. R. Co. Appeal*, 11 W. N. C. 231; *McAboy's Appeal*, 16 W. N. C. 214; *Sommers* v. *City of Cincinnati*, 8 Am. Law. Rec. 612.) No provision of law requires that the sale of a franchise to construct and operate more than one extension or branch of a street surface railroad shall be made separately. The first question certified should, therefore, upon a second ground be answered in the affirmative. (L. 1893,

ch. 434, §§ 90–93; *In re T. F. S. R. R. Co.*, 102 N. Y. 343; *Anderson* v. *Van Tassel*, 53 N. Y. 631; *People* v. *O'Brien*, 111 N. Y. 1; *Starin* v. *Edson*, 112 N. Y. 206; *People ex rel.* v. *Barnard*, 110 N. Y. 548.) The condition of the consent requiring the applicant, if the successful bidder, to pay a bonus of $250,000, neither invalidates the consent of the local authorities nor the sale thereunder. The third question should, therefore, be answered in the affirmative. (*Adamson* v. *U. R. R. Co.*, 74 Hun, 3; *People ex rel.* v. *Barnard*, 110 N. Y. 548; 2 Rorer on Railroads, 1440; Booth on Street Railroads, §§ 284, 287.) The condition in the resolution authorizing the sale complies with the provision of the statute, which requires that but one fare shall be exacted over a branch or extension, and over the line of the railroad that shall have applied therefor. The fifth question certified should, therefore, be answered in the affirmative. (*People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 75; *C. & N. R. R. Co.* v. *C. & E. R. Co.*, 112 Ill. 589; 25 Am. & Eng. R. R. Cas. 158; *Smith* v. *Helmer*, 7 Barb. 417; *F. T. Road* v. *Coventry*, 10 Johns. 389; *Hazelhurst* v. *Freeman*, 52 Ga. 244; *Moses* v. *P.*, etc., *Co.*, 21 Ill. 516; *Mason* v. *B., C. & N. R. R. Co.*, 35 Barb. 373; *T. & A. R. Co.* v. *Adams*, 3 Head. 396; *Appeal W. P. R. Co.*, 99 Penn. St. 155; *C. E. R. Co.* v. *U. P. R. Co.*, 41 Fed. Rep. 293; Elliott on Railroads, 62; Pierce on Railroads, 258.) The resolutions of the common council themselves contain the saving clause quoted in the certified question which makes the resolutions perfectly valid, even if they omitted the precise provisions required by the statute. (*Clarke* v. *Blackmar*, 47 N. Y. 150.) The resolutions authorizing the sale are to be construed so as to be sustained, if by any fair process of reasoning or transposition of language, or punctuation, this result can be attained, and they are of the same dignity when questions of construction or interpretation arise as acts of the state legislature or Congress itself. (*Mayor*, etc., v. *T. A. R. R. Co.*, 16 N. Y. S. R. 122; 117 N. Y. 404; *People ex rel.* v. *La Combe*, 99 N. Y. 43; *Vil. of Carthage* v. *Frederick*, 122 N. Y. 268; *In re B. E. R. R. Co.*, 125 N.

Y. 434.) None of the objections to the consent or sale relate to the jurisdiction of the local authorities to grant the consent or make the sale. The effect of the sale, therefore, even though irregularly made, was to vest the franchise to construct and operate the branch and extension sold in the applicant as the successful bidder. The second, fourth and sixth questions certified should, therefore, be answered in the affirmative. (*People ex rel.* v. *Sturtevant,* 9 N. Y. 263; *Milhau* v. *Sharp,* 27 N. Y. 611; *People* v. *O'Brien,* 111 N. Y. 1; *Ex parte Heath,* 3 Hill, 42; *Comrs.* v. *Chase,* 6 Barb. 37; *Ex parte Kellogg,* 3 Cow. 372; *Ex parte Johnson,* 7 Cow. 424; *Bloom* v. *Burdick,* 1 Hill, 130; *Bissell* v. *M. S., etc., R. R. Co.,* 22 N. Y. 273; *Kelley* v. *Mayor, etc.,* 4 Hill, 263; Beach on Corps. 259, 260; *People* v. *Cook,* 14 Barb. 259.) Without the city as a party to this action, no judgment can be rendered herein based upon the invalidity of the sale. (*Osterhoudt* v. *Bd. of Suprs.,* 98 N. Y. 239; *People* v. *Law,* 34 Barb. 494.) The plaintiffs, as abutting owners, have no standing in court to question the validity of the consent, or the sale thereunder of the title of the defendant, upon any or either of the grounds mentioned in the questions certified. (*Adamson* v. *N. E. R. R. Co.,* 89 Hun, 261; *Talcott* v. *City of Buffalo,* 125 N. Y. 280; *People ex rel.* v. *Flagg,* 46 N. Y. 401.) The provisions of the Railroad Law alleged to have been violated, if construed to be a necessary ingredient of the terms of consent of the local authorities, as claimed by the respondents, would be unconstitutional. The second, fourth and sixth questions certified must, therefore, be answered in the negative. (*Milhau* v. *Sharp,* 27 N. Y. 611; *People* v. *Kerr,* 27 N. Y. 188; *Davis* v. *Mayor, etc.,* 14 N. Y. 506; *In re T. F. S. R. R. Co.,* 102 N. Y. 350; *People* v. *O'Brien,* 111 N. Y. 1; *In re N. Y. Cable R. Co.,* 109 N. Y. 32; *Mayor, etc.,* v. *T. & L. R. R. Co.,* 49 N. Y. 657; *People ex rel.* v. *Barnard,* 110 N. Y. 548; *McCulloch* v. *Maryland,* 4 Wheat. 316.) The right of the purchaser, if other than the Third Avenue Railroad Company, to operate perpetually, irrespective of any foreclosure of any assumed

mortgage, over the Third Avenue Company's tracks, is unquestionable. (*Mayor, etc.,* v. *Sands,* 105 N. Y. 210; *Mayor, etc.,* v. *E. A. R. R. Co.,* 7 App. Div. 84.)

*Elihu Root, William F. Sheehan, David B. Hill* and *Samuel B. Clarke* for respondents. The common council of the city of New York has no power, under the provisions of section 93 of the Railroad · Law, to make a valid sale of more than one. extension of an existing railroad at the same sale, to be struck off upon one bid, when the said extensions are separated from each other in such a way that they can only be operated together over the lines of the said existing railroad. (*Davis* v. *Mayor, etc.,* 14 N. Y. 506; *People* v. *Kerr,* 27 N. Y. 188; L. 1854, ch. 140; L. 1886, ch. 65, § 1; L. 1892, ch. 306, § 93; *People ex rel.* v. *Barnard,* 110 N. Y. 548.) The common council has no power to' impose as a condition upon which its consent shall be given to the sale of an extension or extensions of an existing railroad that such railroad, if the purchaser, shall pay into the city treasury a sum of money in cash, within a certain time after the right to · build the extensions have been struck off to it, in addition to the percentage of gross receipts bid by it upon such sale. (*Davis* v. *Mayor, etc.,* 14 N. Y. 523; *Milhau* v. *Sharp,* 27 N. Y. 611, 620, 622; *Mayor, etc.,* v. *E. A. R. R. Co.,* 118 N. Y. 398; *People* v. *Kerr,* 27 N. Y. 188; *Kellinger* v. *F. S. S. R. R. Co.,* 50 N. Y. 206; *In re G. E. R. Co.,* 70 N. Y. 375; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 159; *Lahr* v. *M. E. R. Co.,* 104 N. Y. 268; *Mahady* v. *B. R. R. Co.,* 91 N. Y. 148; *Hussner* v. *B. C. R. R. Co.,* 114 N. Y. 433; *Fobes* v. *R., W. & O. R. R. Co.,* 121 N. Y. 505; *Kane* v. *N. Y. E. R. R. Co.,* 125 N. Y. 164; *St. V. O. Asylum* v. *City of Troy,* 76 N. Y. 108; *People ex rel.* v. *Maher,* 141 N. Y. 330.) The resolution of the common council consenting to the application of the Third Avenue Railroad Company in this case failed to comply with the statute requiring that but one fare shall be exacted for passage over the extension and the main line of the applicant, in case another than the appli-

cant should be the purchaser, and such · consent was properly held void for this reason by the Special Term. (2 Hilliard on Real Prop. 368, § 114; *Wells* v. *Iron Co.*, 48 N. H. 538; *Bradley* v. *Rice*, 13 Me. 198, 201; *Bonney* v. *Morrill*, 52 Me. 252; *Montgomery* v. *Reid*, 69 Me. 514; *People ex rel.* v. *Jones*, 112 N. Y. 605; *Stearns* v. *Sweet*, 78 Ill. 446; *State* v. *Burke*, 66 Me. 127.)

O'BRIEN, J.   The plaintiffs, as property owners, brought this action against the defendant to perpetually restrain the construction of a street railroad, as a branch or extension of its system, upon that part of Broadway near One Hundred and Eighty-second street in the city of New York known as the Kingsbridge road, at the point where the plaintiffs' property intersects the highway. The action is based wholly upon the allegation that the consent of the city authorities and the sale of the right to use the street for railroad purposes, under which the defendant claims, did not comply with the statute and are invalid. This is an appeal from an order of the ·Appellate Division which sustained an injunction *pendente lite*, granted in the action, and at the same time allowed an appeal to this court from the order, and the court has certified the following questions to us, pursuant to § 9 of article 6 of the Constitution and § 190 of the Code :

" 1. Whether the common council of the city of New York can, under the provisions of section 93 of the Railroad Law, make a valid sale of more than one extension of an existing railroad at the same sale, to be struck off upon one bid, when the said extensions are separated from each other in such a way that they can only be operated together over the lines of the said existing railroad.

" 2. If the common council has no power to make such sale, did a sale made in that way vest the right to build any of the extensions mentioned in the complaint in this action in the Third Avenue Railroad Company ?

" 3. Has the common council the power to impose as a condition upon which its consent shall be given to the sale of an

extension or extensions of an existing railroad, that such railroad if a purchaser should pay into the city treasury a sum of money in cash within a certain time after the right to build the extensions have been struck off to it in addition to the percentage of gross receipts bid by it upon such sale ?

" 4. If the common council had no power to impose such a condition, was the sale of said extensions subject to such condition valid, and did it vest in the Third Avenue railroad the right to build such extensions ?

" 5. Is a condition in the resolutions authorizing the sale that ' No passenger shall be charged more than five cents for a continuous ride from or to the above branch or extension,' which resolutions contain a separate provision that ' All laws or ordinances now in force, or which may be modified or adopted, affecting the surface railroads operating in this city shall be strictly complied with, and especially article IV of the General Railroad Law,' a compliance with that portion of section 93 of the statute which directs that but one fare shall be exacted for passage over such branch or extension and over the line of the railroad which shall have applied therefor ?

" 6. If the foregoing condition is not a compliance with that portion of the statute, is the sale of the extensions pursuant to resolutions which make no other provision for the charging of a continuous fare over the extensions and the line of the road valid, and did the sale made under said resolutions vest in the Third Avenue railroad the right to build the extensions ? "

In July, 1895, the defendant presented to the common council of the city of New York a petition praying that consent might be granted for the construction of a branch or extension of its street railroad system from a designated point in the upper portion of the city, on the line of the existing road, through certain streets and avenues which are named for a distance of about eleven miles to Yonkers. The conditions and stipulations by which the defendant consented to be bound in case the right was granted are fully set forth in the petition and will be referred to hereafter, so far as they are material to

the questions under consideration. The application of the defendant was granted by resolution of the common council, which provided for a sale of the right, at public auction, to the railroad corporation that would agree to pay into the city treasury the largest percentage of its gross receipts per annum.

This sale was made in November, 1895, pursuant to notice, and the defendant was the successful bidder, and, acting upon the assumption that it had acquired the right, was proceeding to construct the road when it was restrained by the injunction in this action. It will be seen that the questions certified lie at the very foundation of the action, and really determine, in advance of the final judgment, the whole controversy between the parties. Such questions, formerly, were not reviewable in this court upon an appeal from a preliminary injunction order, but only after final judgment in the action. The general rule was that when the Supreme Court had exercised its discretion upon the facts and awarded an injunction pending the action, the only question that this court could review was the power or jurisdiction of the court to make the order, and this depended upon the sufficiency of the complaint. If a cause of action was stated which in equity entitled the plaintiff to relief by way of perpetual injunction, the preliminary order was in the discretion of the court and not open to review here. Upon appeal from such an order this court would not interfere except in a case where, upon the face of the complaint, the plaintiff, upon the facts stated, under settled adjudications, was not entitled to final relief. (*H. R. T. Co.* v. *W. T. & R. R. Co.*, 121 N. Y. 397; *Castoriano* v. *Dupe*, 145 N. Y. 250.)

But the Constitution and the statute has evidently conferred power upon the Supreme Court to send here for review questions that were not reviewable before. The questions, however, must be questions of law and not questions of fact, or matters resting in discretion, and the legal effect of the certificate is, we think, that in passing upon the facts and exercising its discretion the court below was obliged to pass upon and decide the questions of law stated, or that they necessarily

arose and were involved in the decision of the appeal from the order which granted the injunction, and were of sufficient importance to require the opinion of this court.

The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a franchise, must always proceed from that source, whatever may be the agencies through which it is conferred. The use or occupation of the streets for such purposes, without the grant or permission of the state through the legislature, constitutes a nuisance, which may be restrained by individuals injuriously affected thereby. (*Fanning* v. *Osborne*, 102 N. Y. 441.) The city authorities have no power to grant the right except in so far as they may be authorized by the legislature, and then only in the manner and upon the conditions prescribed by the statute. (*Davis* v. *Mayor*, etc., 14 N. Y. 506 ; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *People* v. *Kerr*, Id. 188.)

The power of the legislature to authorize the grant of such a franchise by local authority is limited by the Constitution and forbidden, except in cases where the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of the street or highway upon which it is proposed to construct or operate such railroad, be first obtained. (Art. 3, § 18.) The legislature, however, in virtue of its general power over municipalities, may regulate the mode and manner in which such consent shall be given by the authorities having the control of the street, and may prescribe the conditions upon which it may be given, and all these matters have been regulated by statute. (Laws 1892, chs. 306, 676; Laws 1893, ch. 434.) The questions certified to us by the court below call for a construction of this statute or certain important provisions thereof which affect the validity of the franchise granted to the defendant. In conferring the franchise upon the defendant to operate a railroad in the streets designated, the

common council did not act in the exercise of any natural or inherent power pertaining to the city, but under delegated powers, to be used and exercised for public purposes, and, in order to vest the defendant with the right claimed, it must appear that there was a substantial compliance with the provisions of the statute.

The first and most important question is whether the common council has the power to make a valid sale of the franchise for more than one branch or extension of an existing railroad at the same sale and under the same bid, or, in other words, does the statute contemplate that consent may be given to the construction of two or more branches or extensions of an existing railroad in one official act and the franchises sold together as one upon the same bid ? The statute limits the bidders at any sale of a franchise at auction to railroad corporations authorized to construct and operate a street railroad in the city, and, in prescribing that the consent of the city when given must be upon the condition that the franchise for construction of a road or a branch or extension of one existing in any street shall be sold at public auction to the bidder who shall agree to give to the city the largest percentage per annum of the gross receipts of the corporation, the purpose evidently was to secure to the city the largest revenue that would be consistent with the public convenience and the public interest. The power to consent was not conferred upon the local authorities for the sole purpose of securing pecuniary profit or bringing money to the treasury, but was to be exercised with due regard to the interest and convenience of the public. This is manifest from the provisions of the statute which requires that the consent for the construction of a branch or extension shall be conditioned upon the right of the public to use both the new road and the old on payment of a single fare, and, in case the right is acquired by a corporation other than the applicant, the gross receipts shall be divided in the proportion that the length of such extension or branch so sold shall bear to the entire length of the road that shall have applied therefor and of such branch or extension, and that,

20

if such right shall be purchased by the applicant, the percentage to be paid shall be calculated on such portion of its gross receipts as shall bear the same proportion to the whole value thereof as the length of such extension or branch shall bear to the entire length of the road. The statute evidently contemplates that what is called a branch or extension of an existing railroad shall be constructed and operated under a franchise applied for by that railroad, and, when put in operation, the branch or extension shall, for certain purposes, be deemed to be a part of the road making the application, even though the franchise to construct the branch shall be acquired and the new road operated by another corporation. Whoever may acquire the franchise at the competitive bidding, and whoever may own and operate the branch or extension, it must still bear certain relations to the parent road that inaugurated the proceedings for its construction, and at least one of these relations is the right of the public to a continuous passage over both the main line and the new branch on payment of a single fare.

The language of the statute seems to contemplate the sale of a franchise for a single branch or extension and not several branches or extensions grouped together. The provisions for a single fare, for the division of the gross receipts from joint business and the manner of calculating the percentage to be paid to the city, all point in the same direction. It is quite doubtful indeed if these several provisions of the statute could be carried into effect according to the intention of the legislature if several branches or extensions could be grouped together and sold as one.

But perhaps the weightiest reason for this view is to be found in the fact that a sale of the franchise for several branches or extensions of an existing railroad at one time and under one bid, would defeat the general purpose of the statute and enable the common council in most cases practically to select the purchaser of the right. This may be illustrated by the situation existing in this case and which has been very clearly pointed out by the court below. The southerly part

of the extension or branch intersecting the main line of the defendant's railroad is practically of no use to any other corporation. This is separated from the northerly branch or extension by a part of the line of the defendant, about half a mile in length. This northerly branch in itself would constitute an extensive railroad many miles in length, and other corporations might desire to compete for the franchise for its construction and operation, and yet they would be unable to do so except upon condition that they also purchase another franchise and construct and operate another road where it would be wholly impracticable. Where several franchises are exposed for sale at once, the successful bidder must buy them all, and in case of a sale of the franchise for several branches or extensions of an existing road in this manner it is easy to see how all competition at the sale may be practically suppressed.

We think that the consent for the construction of two branches or extensions of the defendant's railroad as one act, conditioned upon a sale at auction of both under one bid, was not a compliance with the letter or the spirit of the statute, and was not, therefore, a valid exercise of the power conferred upon the city authorities by the statute.

It is said, however, that there was in fact but one branch or extension of the defendant's road contemplated, and but one franchise sold. This proposition is deduced from the fact that what are here referred to as two branches or extensions were to be connected by a section of the main line of the defendant's railroad, about half a mile in length. With respect to this connecting link between the two proposed branches or extensions, the defendant in its application consented that, in case any other corporation became the purchaser of the right to construct and operate a railroad upon the two proposed branches or extensions, it should be vested with the right in perpetuity to use its tracks and apply any motive power thereto upon the streets and avenues covered by the intervening road, in order to constitute a continuous line of railroad and unite the two branches thus separated into one. The

grant of this right by the defendant was one of the conditions upon which the consent was given and a part of the thing sold. Since the defendant became the purchaser, it could doubtless use this connecting link to advantage, and the two branches would become practically one. The whole route was selected and described by the defendant in the petition to the common council, and it was at liberty to use any part of its system in laying out the proposed extensions so far as concerned its own interests and convenience. But since the statute plainly contemplated competitive bidding for the franchises by other corporations the question arises with respect to the power of the city authorities to blend together private rights and public franchises and expose them all to sale as one indivisible thing. The right which the defendant consented to grant was a limited one, that is, the right to the use of the track without the motive power. The cable and power, by means of which this intervening link was operated, could be used by the defendant but not by any other corporation desiring to purchase the franchise at the public sale. There are many reasons why this situation would give to the defendant a great advantage over other corporations competing at the sale for the purchase of the franchise. It would be a formidable embarrassment to competition on the part of corporations other than the applicant. With respect to this connecting link neither the state nor the city had any franchise to sell. What the latter advertised and sold was not the thing which the statute authorized it to advertise and sell, but a part of the defendant's property. It is quite true that it did all this with the defendant's authority and consent, but the statute conferred no power upon it to act as the defendant's agent in commingling together public and private rights. The private right thus sold was liable to extinguishment or destruction from any cause or through any proceeding affecting the right which the defendant had to operate a railroad on this part of the route. All that another corporation could acquire through this arrangement between the local authorities and the defendant was permission for a limited use of

private property. It could not acquire what the statute authorized the authorities to sell, namely, a public franchise. The statute did not contemplate that the city should become the agent of the defendant for the sale of this private right united to franchises proceeding from the state. But whatever may be said with respect to the power of the local authorities to do what has been done in this case, we think it is clear that they did not by such an arrangement change or convert what were essentially two things or two franchises into one thing or one franchise.

A purchaser at the sale, other than the defendant, might succeed in constructing and operating a continuous line of railroad, but it could not acquire and would not own a continuous franchise. The physical structure might be united and operated by the acquisition of private property, but the franchises would still remain, as they were before, separated by the intervening paramount right which was vested in the defendant. So we think that the contention of the learned counsel for the defendant that what was sold was one franchise for one branch or extension, and not two, cannot be sustained.

The next question involves the power of the local authorities to accept the proposition of the defendant to pay into the city treasury, in addition to the percentage of gross receipts prescribed by the statute, a lump sum of $250,000, and to make the payment of that sum a condition of the consent and sale in case the defendant became the purchaser. It is conceded that the defendant was so situated with reference to these proposed branches or extensions of its system, that it could afford to pay for the right to construct and operate them a larger sum of money than any other corporation competing with it for the right. But the question is how far such pecuniary considerations can be permitted to enter into the execution of a trust or agency confided by the statute to the local authorities for the benefit of the public. The defendant's ability to pay could find a fair field in bidding up the percentage on gross receipts, but whether it could tempt the local authorities by an offer of a large sum of money to be

paid at once into the treasury is quite another question. If the common council could make the payment of such a sum by the defendant a condition of its consent, it could make it a condition in all cases, and if it could exact the payment of that sum there can be no limit placed upon its power in that regard. The disposition of public franchises would then depend upon the ability of the purchaser to pay, and the party offering the largest sum of money to be paid down would be enabled to shape the route and secure the franchise. This might bring money to the treasury and advantage to the corporation thus paying for the franchise, but at the same time the public convenience and the public interests might have been overlooked, and in many cases probably would be. It is quite clear that there is no authority in the statute for the sale of a franchise for a gross sum of money. The monetary conditions that the local authorities may attach to this consent are clearly pointed out and consist of an annual revenue in perpetuity based on percentages of gross receipts. The legislature having thus covered the whole subject nothing is left to the discretion of the common council. The express provisions of the statute with respect to the monetary conditions should be construed as excluding all power in the local authority to add to or take from them. The sovereign power having regulated the whole subject, it is not competent for the city authorities to make further and different regulations in the absence of express legislative authority. The compensation attached to a public office or the conditions upon which a public franchise may be held, when regulated and prescribed by law, cannot be changed by agreement between the officer or the party who applies for the franchise, and the local authorities intrusted with the appointment or charged with the duty of disposing of the franchise in the public interests. Voluntary agreements of this character, when not expressly sanctioned by law, are opposed to sound principles of public policy. (*People ex rel. Bush* v. *Thornton*, 25 Hun, 456; *People ex rel. U. & A. Co.* v. *Supervisors*, 60 Hun, 328.)

When the statute prescribes the monetary conditions upon which a franchise may be acquired, the public agencies intrusted with the power and duty to convey it cannot permit their action to be influenced by the offer of pecuniary benefits to the locality beyond that fixed by law. The only authority claimed for making the payment of a lump sum of money one of the conditions of the consent and sale is the following provision of the statute at the close of section ninety-three :

"The local authorities may, in their discretion, make their consent to depend upon any further conditions respecting other or further security, or deposit, suitable to secure the construction, completion and operation of the railroad within any time not exceeding the period prescribed in this article, and respecting the character, quality or motive power of the road to be completed, and respecting the application of any provision herein contained as to carriage of passengers for single fare and the division of gross receipts and the payment of percentages to the line leased or operated under contract by the applicant for an extension, and also respecting any other matter concerning which, in their judgment, further conditions would be for the public interest."

The "further conditions" here referred to which the local authorities might attach to the consent in their discretion, obviously related to matters not fully covered by the statute itself, and which are *ejusdem generis* with those specially enumerated. (Bouv. Law Dict. [15th ed.] 581; *In re Reynolds*, 124 N. Y. 395.) They do not authorize the local authorities to attach additional monetary conditions to the consent. The statute having provided that the sale shall be made to the corporation agreeing to pay the largest percentage of its gross receipts, the local authorities cannot enlarge the condition by requiring in addition the payment of a gross sum, and their power in that regard is not affected by the fact that the applicant offers to pay such sum in addition to the percentages.

If these views are correct, it follows that the statute was not complied with in its true spirit and meaning concerning the consents in question, and the subsequent sale of the franchises,

and, therefore, the first, second, third and fourth questions should be answered in the negative.

With respect to the two general questions thus far discussed, it is said that there are no prohibitive words in the statute which forbid or invalidate the action actually taken by the local authorities in this case. That may be true, but the question is, not what is prohibited, but what powers have been granted. That must be determined from the terms and general scope of the statute, keeping always in view the general purpose and public policy that led to the enactment.

It is a statute conferring power upon local authorities and regulating the procedure for the disposition of public franchises, and, even if open to two constructions, that must be preferred which best safeguards the public interests, conduces to the harmonious operation of all its parts, and promotes purity and simplicity of administration.

The application of the provisions for single fares, for the payment of percentages on gross receipts and the division of joint business upon the principles prescribed therein, to two franchises sold as one, united in a continuous line by a section of an existing railroad, forming a part of the thing sold, and which for all practical purposes is private property, becomes exceedingly difficult and, if possible at all, puts a strain upon the statute not contemplated. When these different elements, entering into the right to construct and operate a street railroad, are treated as one thing, obstacles and embarrassments are at once presented which seriously interfere with the process of adjusting the various parts of the general scheme embraced in the statute to each other, in such a way as to accomplish the result which was evidently in view.

On the other hand, the statute is plain and simple in its application to a single franchise, unconnected with private rights, but sold upon its own merits, not in consideration of any gross or lump sum of money, but only the annual revenue based upon the prescribed percentage upon gross receipts.

So that, notwithstanding the absence of prohibitory words in the statute, the conclusion is reasonable that neither the

sale of several franchises in one group, nor the payment of a gross sum as one of the conditions of the consent, in addition to the other conditions specified, is within the purview of the statute.

The fifth question relates to the validity of another of the conditions expressed in the resolution of the common council expressing the consent. The condition is in these words: "No passenger shall be charged more than five cents for a continuous ride *from* or *to* the above branch or extension." The language of the statute is that "such consent shall provide that but one fare shall be exacted for passage over such branch or extension *and over the line of road which shall have applied therefor*." It will be seen that the condition does not literally comply with the statute. When it is subjected to a narrow or technical construction it relates to the fare for passage over the old road or main line and leaves that over the contemplated branches or extensions untouched. But it is quite evident when all the conditions are read together, as they should be, that the common council intended to comply with the statute. One of the conditions contained in the resolution giving the consent provided that "all laws or ordinances now in force, or which may be modified or adopted, affecting the surface railroads operating in this city, shall be strictly complied with and especially article four of the General Railroad Law."

We have seen that the proposed branches or extensions, by whatever corporation constructed, operated or owned, were to become and remain, by force of the statute, branches or extensions of the defendant's system. The obvious meaning of the statute is, that in such cases the public should be entitled to passage from point to point over or upon the branches and the main line for a single fare. In so far as concerns the rights of the public and the obligation to pay fare, the original line and branches are treated by the statute as one road, upon which but one fare could be charged. If the common council had wholly omitted to insert this condition in the resolution, it is not likely that the consent would, for that reason, be held

21

to be invalid, since the statute would impose the condition upon the railroads and render the exaction of more than one fare under such circumstances unlawful. The conditions, fairly construed, provide, in effect, that but one fare shall be charged for a continuous passage over the main line and the contemplated branches or extensions; and so, we think, that there was in this respect a substantial compliance with the statute. The fact, however, that there was in this respect a compliance could not vest the franchises in question in the defendant, since the defects in the proceeding hereinbefore considered are fundamental and affect the jurisdiction to make the sale.

With this explanation, the fifth question should be answered in the affirmative and the sixth in the negative.

While the franchise to use public streets for railroad purposes can vest in the corporation only after a substantial compliance with all the provisions of the statute, yet a mere inadvertence in the use of words will not invalidate the grant when it is apparent upon reading all the proceedings and all the conditions of the consent, that every benefit to the public which the statute contemplates has been secured or provided for. The language of the condition as to a single fare, while perhaps open to some criticism if it stood alone, yet, when read with all the other conditions and with the statute which are made a part of it by reference, secures to the public every right which the law contemplated. Unless this view of the case should be changed by the final judgment, it would follow that the consent of the local authorities and the sale are invalid, though, so far as we can now see, the other proceedings are not affected and the application may still be regarded as pending before the common council.

There are many views of this controversy to be found in the briefs of the respective counsel which are not referred to here since most of them are covered by the opinion below. The fundamental questions involve the construction of a statute which though general in form is local in its operation. The court below is doubtless more familiar with its practical

working than we possibly can be, and its unanimous decision of the questions should not be disturbed here unless it is made clear that some erroneous view of the law inheres in the result.

After a careful examination of the case we have not been able to discover any such error, and so we think that the order appealed from should be affirmed, with costs, and the questions certified to us answered as above indicated.

All concur, except Martin, J., not sitting.

Order affirmed.