(80 Misc. Rep. 90.)

### BRADLEY et al. v. DEGNON CONTRACTING CO. et al.

(Supreme Court, Special Term, Kings County.   March 13, 1913.)

1. MUNICIPAL CORPORATIONS (§ 671*)—STREETS—ENCROACHMENTS—INJUNCTION BY ABUTTING OWNERS.

Abutting owners, who own the fee in the street, may sue to enjoin encroachments inconsistent with its ordinary uses.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1447–1450; Dec. Dig. § 671.*]

2. MUNICIPAL CORPORATIONS (§§ 680, 681*)—STREETS—PERMISSION TO OPERATE RAILROAD—VALIDITY.

Permits from the Public Service Commission and a city park department to operate a railroad on a street are invalid, because such right can only be acquired by a grant of a franchise, and such permits do not comply with the statutes as to the issue of franchises for the operation of street railroads.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. §§ 680, 681.*]

3. MUNICIPAL CORPORATIONS (§§ 680, 681*)—STREETS —USE FOR RAILROAD—AUTHORITY OF MUNICIPALITY.

In absence of special statutory regulations, authority to use the public streets of a municipality for railroad purposes is a franchise proceeding from the state, and the municipality has no power in respect thereto, except such as is expressly given by statute, and then only in the manner and on the conditions prescribed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. §§ 680, 681.*]

4. MUNICIPAL CORPORATIONS (§§ 680, 681*)—STREETS—OBSTRUCTIONS—AUTHORITY TO CREATE.

Neither the Public Service Commission, nor a city park department, nor any other authority, can create or authorize the obstruction of a street by a railroad for the use of a contracting company in hauling material from its excavation for a subway in another street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. §§ 680, 681.*]

5. MUNICIPAL CORPORATIONS (§ 661*)—CONTROL OVER STREETS IN GENERAL.

A municipality has no inherent power over streets, but the Legislature may delegate to it control over streets within its limits.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. § 661.*]

6. MUNICIPAL CORPORATIONS (§ 692*)—STREETS—RIGHT TO OBSTRUCT.

A legally created highway cannot be occupied by permanent structures or improvements which interfere with its primary purposes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1493; Dec. Dig. § 692.*]

7. MUNICIPAL CORPORATIONS (§ 669*)—STREETS—RIGHTS OF ABUTTING OWNER—OBSTRUCTIONS.

Abutting owners are entitled to have the highway maintained in front of their premises, with the roadway on which they can freely and with-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

out obstruction travel, crossing and recrossing at any place, in vehicle, or on foot, or in any other usual methods of travel in public highways.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1445; Dec. Dig. § 669.*]

8. EMINENT DOMAIN (§ 119*)—ADDITIONAL BURDEN ON STREET—RIGHT TO COMPENSATION.

Construction of a railroad on a street for use in removing material excavated from a subway in an adjoining street creates an additional burden on the highway, not for street use, but for municipal or public use, and it cannot be placed thereon without compensating the abutting owners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

9. STREET RAILROADS (§ 34*)—STREETS—ABUTTING OWNERS—OBSTRUCTIONS—INJUNCTION.

The difficulty of exact estimation in a court of law of the loss to abutting owners from the inability to sell or rent their property, resulting from the threatened operation of a railroad in the street which they seek to enjoin, is sufficient to give jurisdiction in equity.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 87–90; Dec. Dig. § 34.*]

10. STREET RAILROADS (§ 34*)—USE FOR RAILROAD—INJUNCTION BY ABUTTING OWNERS.

Abutting owners cannot be deprived of the right to enjoin the operation of a railroad in a street for the transfer of excavated materials from a subway in an adjoining street because the method adopted is less injurious than employing carts.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 87–90; Dec. Dig. § 34.*]

Suit by Harry L. Bradley and others against the Degnon Contracting Company and another. On motion for a temporary injunction. Motion granted.

Xenophon P. Huddy, of New York City, and Wheeler Palmer, for plaintiffs.

Parker & Aaron, of New York City, for defendants.

BENEDICT, J. This is an application arising upon an order to show cause containing a temporary injunction, signed by Mr. Justice Blackmar on February 6, 1913. It appears from the complaint and moving papers that the plaintiffs are the owners of certain parcels of real property abutting on both sides of Seventy-Ninth street, in the borough of Brooklyn, between Fourth avenue and the Shore Road, and that the fee of said Seventy-Ninth street in front of their premises, respectively, is vested in the abutting owners, subject only to the easement of the public for usual and ordinary street purposes; that against the consent of the plaintiffs the defendants have constructed on said street, between Fourth avenue and the Shore Road, a distance of about half a mile, a narrow-gauge railroad about three feet in width, with steel rails laid upon ties which are sunk into the surface of the street and situated upon the northerly sidewalk of said street, between Fourth avenue and Third avenue, and on the middle of the street between Third avenue and Second avenue, then crossing over to the southerly side of the street, and continuing partly in the gutter and

partly upon the sidewalk of said southerly side of said street down to the Shore Road, and in front of and across the real property of each of the parties plaintiff herein; that the defendants, against the consent and protest of the plaintiffs, purpose to run upon the said railroad trains of dump cars operated by steam locomotives for the purpose of hauling dirt, stones, and other refuse from excavations now being made, or which are about to be made, in Fourth avenue by reason of the construction of the Fourth avenue subway; and the plaintiffs pray for a mandatory injunction directing the defendants to remove from said Seventy-Ninth street said rails, ties, and tracks and railroad, and all other things connected therewith, in and upon said Seventy-Ninth street and the property of the plaintiffs, and that each of the plaintiffs herein recover from the defendants his damages for trespasses already committed upon the property, and for other injuries sustained by reason of each of the alleged unlawful acts of the defendant, and for a temporary injunction pendente lite, restraining the defendants and each of them from doing any act or suffering the same to be done in furtherance of the construction or completion of the said railroad, or the operation thereof, upon said Seventy-Ninth street, in the borough of Brooklyn, and upon and across the said premises of the plaintiffs herein.

It appears from the affidavits attached to the complaint that it is the purpose of the defendants to operate trains of ten steel dump cars over said railroad during the entire 24 hours in each working day. These trains are to be hauled by steam locomotives, four of which are in readiness for such use. It is obvious that, in addition to the noise, smoke, and steam which the operation of such a railroad would necessarily entail, the road would be a menace to the lives and limbs of the plaintiffs and of other people living along its route.

The defendants seek to justify their right to construct the railroad by reason of a permit from the Public Service Commission for the First District, authorizing the construction of the railroad in question, and another permit from the department of parks of the borough of Brooklyn, giving the Degnon Contracting Company permission to cross the Shore Road to Seventy-Ninth street with a narrow-gauge railroad.

There is no question in my mind but that the plaintiffs are entitled to maintain this action. The rules relative to the respective rights of mere abutters upon the highway and of abutting owners owning the bed of the street have been laid down in numerous decisions in this state.

[1] Whatever may be said as to the right of an abutter to bring an action to enjoin an encroachment upon a street for purposes inconsistent with those uses to which streets have ordinarily been subjected, it is perfectly clear that an abutting owner, who also has the ownership of the bed of the highway, has the right to maintain such action. This proposition is well stated by Mr. Justice Gray in City of Buffalo v. Pratt et al., 131 N. Y. 293, 298, 30 N. E. 233, 234 (15 L. R. A. 413, 27 Am. St. Rep. 592), as follows:

"I do not think that it is needed, or that it would be profitable, to review the many cases in which the rights of owners of property in and abutting upon the street have been considered. The result has been to generally de-

fine and assign their particular interests and rights. The mere abutter, with no ownership in the bed of the street, is entitled to protection against an interference with certain easements in the street. They constituted property, of which neither Legislature nor municipality can deprive him without compensation. Kane v. N. Y. Elev. R. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640. It is unquestionable, however, that the ownership of the fee of the land in a street has a substantial value to the abutting property holder, in the degree of control it gives to him over the uses to which the street may be put. It vests him with the right to defend against and to enjoin a use of or an encroachment upon the street, under legislative or municipal authority, for purposes inconsistent with those uses to which streets should be or have been ordinarily subjected, unless just compensation is provided to be made. His ownership of the land in the street was subject only to the public easement therein as a highway. In the absence of such a provision for compensation, the taking of the street for some new or additional and inconsistent use would be illegal. But, if the abutting property owner does not own the fee in the land of his street, he has no such right to compensation, and is remediless against a taking of the street under legislative or municipal sanction for other uses, except such other uses be unreasonable, and in their nature so improper as to obstruct a free passage upon the street, or to amount to a nuisance, or to deprive him of the enjoyment of easements of light, air, and access. As to any such improper or unreasonable use of a street, the abutting property owner would be undoubtedly have the right to come into a court of equity and to claim its intervention to protect his general rights."

See, also, Williams v. N. Y. Central R. R. Co., 16 N. Y. 97, 104, 69 Am. Dec. 651; Fobes v. Rome, W. & O. R. R. Co., 121 N. Y. 505, 515, 24 N. E. 919, 8 L. R. A. 453; Craig v. Rochester City & B. R. R. Co., 39 N. Y. 404, 409, 410, 411; Osborne v. Auburn Tel. Co., 189 N. Y. 393, 82 N. E. 428; Mahady v. Bushwick R. R. Co., 91 N. Y. 148, 153, 43 Am. Rep. 661.

The permit from the Public Service Commission and that issued by the park department are invalid for the following reasons:

[2] That the only way by which the defendants could acquire the right to operate said railroad through Seventy-Ninth street would be by franchise, and the issue of the permits above referred to do not comply with the statutory provisions regarding the issue of franchises for the operation of street railways.

[3] Even in the absence of special and peculiar regulations imposed by the Legislature, it is well settled that authority to use the public streets of a municipality for railroad purposes is a franchise proceeding from the state, and the municipality has no power in respect thereto, except such as is expressly given by statute, and then only in the manner and upon the conditions prescribed. Village of Phœnix v. Gannon, 123 App. Div. 93, 94, 108 N. Y. Supp. 255, 256, where it is said:

"It is elementary that the authority to use the public streets of a municipality for railroad purposes is a franchise proceeding from the state, and the municipality has no power in respect thereto, except such as is expressly given by statute, and then only in the manner and upon the conditions prescribed. In the case of Beekman v. Third Avenue R. R. Co., 153 N. Y. 144, 152 [47 N. E. 277, 278], this principle is stated by Judge O'Brien in no mistakable language. He says: 'The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a franchise, must always proceed from that source, whatever may be the agencies through

which it is conferred. The use or occupation of the streets for such purposes, without the grant or permission of the state through the Legislature, constitutes a nuisance, which may be restrained by individuals injuriously affected thereby. Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 307. The city authorities have no power to grant the right, except in so far as they may be authorized by the Legislature, and then only in the manner and upon the conditions prescribed by the statute. Davis v. Mayor, etc., 14 N. Y. 506, 67 Am. Dec. 186; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; People v. Kerr, 27 N. Y. 188.' A like question arose in the case of Potter v. Collis, 156 N. Y. 16, 30 [50 N. E. 413, 415], in which Judge Gray, writing for the court, said: 'The resolution of the common council, in 1851, was void, inasmuch as it purported to do something not within the powers of that body. It undertook to authorize the laying of railroad tracks in the city streets and avenues and thus to subject them to new uses. But the title of the municipal corporation to the public streets was held in trust for the public, and the power to regulate those uses was vested solely in the Legislature. It might delegate that power, as any other appropriate power, to the municipal corporation; but, without such delegation, any such act by the corporation, for not being within the strict or implied terms of its chartered powers, would be invalid. * * * The situation of the city corporation, in the machinery of the state, was that of a mere agency, possessing no inherent and independent authority to create rights in others, which affected the public interests. It undertook to grant a right, which, if effected, operated to invest private parties with an exclusive interest in its streets. This the Legislature, possessing a supreme authority over the public territory, within constitutional limitations, could, of course, do; but to attribute such a power to the municipal corporation would be foreign to the concept of such an administrative agency of government.' In that case it was held that the resolution of the common council of the city of New York, which assumed to authorize certain individuals to construct a railroad in specified streets and avenues which make up the greater part of the main line of the present Eighth Avenue Railroad Company, subsequently organized by such individuals, was void and beyond the power of the common council, whether considered as a grant of a franchise or a license."

See, also, Village of Phœnix v. Gannon, 195 N. Y. at page 474, 88 N. E. at page 1067, where it is said:

"Primarily the power to grant franchises in the public streets resides in the state. Municipalities have only such power in this regard as has been delegated to them by the Legislature. Beekman v. Third Ave. R. R. Co., 153 N. Y. 144, 152 [47 N. E. 277]; Fanning v. Osborne, 102 N. Y. 441 [7 N. E. 307]."

In the case of City of New York v. Bryan, 196 N. Y. 158, 89 N. E. 467, it is stated:

"But the consent of the municipal authorities was not the grant of an independent franchise, like the deed from the owner, where the railroad runs through private property. Not only the franchise to be a corporation, but the franchise granted to a corporation when formed, springs from the state. It is the elementary definition of a franchise that it is a grant from the sovereign power. 3 Kent's Commentaries, *458; Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 307. In Beekman v. Third Avenue R. R. Co., 153 N. Y. 144, 152, 47 N. E. 277, 278, this court said: 'The authority to make use of the public streets of a city for railroad purposes primarily resides in the state, and is a part of the sovereign power, and the right or privilege of constructing and operating railroads in the streets, which for convenience is called a franchise, must always proceed from that source, whatever may be the agencies through which it is conferred.' It is true that since the adoption of the constitutional amendment of 1875 no act of the Legislature can authorize the laying of railroad tracks in the streets without the consent of the local authorities; but that in no way modifies the principle that the grant proceeds from the legislative authority. The case is most analogous

to that of a trustee, who is authorized to convey the corpus of the trust only with the consent of the beneficiary. The consent of the beneficiary is necessary; nevertheless the title acquired by the grantee is that of the trustee, and not that of the beneficiary. Therefore the consent of the city was but a step in the grant of a single indivisible franchise to construct and operate a street railroad."

[4] The construction and operation of the said railroad would create an unlawful physical obstruction of the highway. In Cohen v. Mayor, 113 N. Y. 532, 535, 536, 21 N. E. 700, 701 (4 L. R. A. 406, 10 Am. St. Rep. 506), it is stated:

"The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose. * * * It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture. If it be permanently, or even habitually, in the highway, it is a nuisance. The highway may be a convenient place to the owner of carriages to keep them in; but the law, looking to the convenience of the greater number, prohibits any such use of the public streets. The old cases said the king's highway is not to be used as a stable yard, and a party cannot eke out the inconvenience of his own premises by taking in the public highway. These general statements are familiar, and borne out by the cases cited. King v. Russell, 6 East, 427, decided in May, 1805; Rex v. Cross, 3 Camp. 224; Rex v. Jones, Id. 230; People v. Cunningham, 1 Denio, 524, 43 Am. Dec. 709; Davis v. Mayor, etc., 14 N. Y. 506, 524, 67 Am. Dec. 186; Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831. Familiar as the law is on this subject, it is too frequently disregarded or lost sight of. Permits are granted by common councils of cities, or by other bodies, in which the power to grant them for some purposes is reposed, and they are granted for purposes in regard to which the body or board assuming to represent the city has no power whatever, and the permit confers no right upon the party who obtains it. As was said by Lord Ellenborough in the case of Rex v. Jones, supra, the law upon the subject is much neglected, and great advantages would arise from a strict, steady application of it. This case is a good example of its neglect. There is no well-founded claim of the existence of a power in the defendant to issue such a license. The defendant refers to sections 10 and 27 of chapter 27 of the ordinance of 1859. The former provides for an assignment by the mayor of a stand where the owner of a duly licensed public cart may let it remain waiting to be employed, and also a stand where it may remain at other times upon certain terms, etc. The latter section refers to a licensed cartman, and provides for storing his cart in front of his premises under certain regulations. Neither section has anything to do with a case like this. The Legislature has expressly enacted that the city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway. Consolidation Act (Laws 1882, c. 410) § 86, subd. 4; People ex rel. O'Reilly v. Mayor, etc., 59 How. Prac. 277; Ely, Mayor, etc., v. Campbell, Com'r, etc., 59 How. Prac. 333; Lavery v. Harrigan, 50 N. Y. Super. Ct. 463."

In Peace v. McAdoo, 110 App. Div. 15, 96 N. Y. Supp. 1040, the court says:

"The very idea of a street imports the right of the general public to pass and repass thereon throughout all parts thereof. In People v. Kerr, 27 N. Y. 188, 194, the court says: 'The right of the public—that is, of the people of the state—in a street or highway is a right of passage. In the ordinary use of the highway, it is a right to pass and repass over its surface on foot or in carriages, at pleasure.' In Smith v. McDowell, 148 Ill. 51 [35 N. E. 141, 22 L. R. A. 393], it is said: 'The municipality, in respect of its streets,

is a trustee for the general public, and holds them for the use to which they are dedicated. The fundamental idea of a street is, not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it.' "

See, also, Lavery v. Harrigan, 52 N. Y. Super. Ct. 463; Speyer v. Mosier, 112 N. Y. Supp. 307.

In Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831, Judge Earl, writing for the Court of Appeals, says:

"The primary purpose of streets is use by the public for travel and transportation, and the general rule is that any obstruction of a street or encroachment thereon which interferes with such use is a public nuisance; but there are exceptions to the general rule, born of necessity and justified by public convenience. An abutting owner engaged in building may temporarily encroach upon the street by the deposit of building materials. A tradesman may convey goods in the street to or from his adjoining store. A coach or omnibus may stop in the street and take up or set down passengers; and the use of a street for public travel may be temporarily interfered with in a variety of other ways without the creation of what in the law is deemed to be a nuisance; but all such interruptions and obstructions of streets must be justified by necessity."

See, also, Sweet v. Perkins, 196 N. Y. 482, 90 N. E. 50.

Neither the Public Service Commission, nor the park department. nor any other authority, could create or authorize the creation of said obstruction in said highway.

[5] A municipality has no inherent power over streets (Barhite v. Home Telephone Co., 50 App. Div. 25, 63 N. Y. Supp. 659); but the Legislature may delegate control over public streets within its limits to the municipality (Coster v. N. Y., 43 N. Y. 399).

[6] The general principle applies that a legally created highway cannot be occupied by other people's adjuncts, gates and fences, ditches, or other permanent structures or improvements, which interfere with the primary purposes of the way. Abbott's Municipal Corporations, vol. 2, § 832.

"The power to authorize obstructions may be delegated to municipal corporations; but in the absence of a provision in the charter, or some general law upon the subject, a municipality has no more right to license or maintain a nuisance than an individual would have, and for a nuisance maintained upon its own property the city is liable, the same as an individual would be. Even where the city is given exclusive power over its streets, such power must be exercised for the good of the general public, and the city cannot authorize obstructions in its streets for merely private purposes."

See, also, Cohen v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506; People ex rel. O'Reilly v. Mayor, 59 How. Prac. 277; City of New York v. Knickerbocker Trust Co., 104 App. Div. 223, 93 N. Y. Supp. 937.

"The question of whether a use of a highway may or may not be an obstruction is entirely separate and distinct from the right of an abutting owner to receive compensation for that use. The Legislature with its power of control may authorize the use of highways for certain purposes, which without that authority would be regarded as obstructions, public nuisances, and subject to removal. The Legislature, however, cannot deprive an abutting owner of his right to compensation by the legislative imposition upon a highway of an additional burden and servitude which was not contemplated at the time of the dedication of the highway, and for which the owner at that time received no compensation." Abbott's Municipal Corporations, vol. 2, § 830.

The provision of the charter of the city of New York (Laws 1901, c. 466) on this subject is found in section 50, which provides as follows:

"Subject to the Constitution and laws of the state, the board of aldermen shall have power to regulate the use of streets and sidewalks by foot passengers, animals or vehicles.  *  *  *  The board of aldermen shall not have power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repairing of a building on a lot opposite the same. *  *  *  The board of aldermen shall not pass any special ordinance in relation to any of the matters mentioned in this section."

And by section 47, as amended by Laws 1908, c. 376, it is provided:

"That all the powers in this section, or elsewhere in this act, granted to the board of aldermen shall be subject to the control of the board of estimate and apportionment over all the streets, avenues, highways, boulevards, concourses, driveways, bridges, tunnels, parks, parkways, waterways, docks, bulkheads, wharves, piers, and all public grounds and waters which are within or belong to the city as provided within this act."

[7] These plaintiffs and the other abutting owners on the said highway are entitled to have the highway maintained in front of their premises, with the roadway upon which they can freely and without obstruction travel, crossing and recrossing said highway at any place thereon, and in vehicles, or on foot, or in any other usual methods of travel in public highways.

In Elliot's Treatise on Law of Roads and Streets (2d Ed.) page 690, it is stated:

"Public highways belong from side to side and end to end to the public, and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated notwithstanding space is left for the passage of the public.  This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners, but to all taxpayers and the traveling public as well.  This expediency forbids any other rule, and, even if it did not, the rule is well founded in principle, for it is well settled that 'the public are entitled not only to a free passage along the highway, but to a free way along any portion of it not in the actual use of some other traveler.'  And if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes.  The rule would seem, upon principle, at least, to extend to country roads, as well as to streets, and it is thus stated by a well-known English text-writer.  In the case of an ordinary highway running between fences, the right of way or passage is prima facie, and, unless there is evidence to the contrary, extends to the whole space between the fences, and the public are entitled to the use of the whole of it, as the highway, and are not confined to the path which may be metalled, or kept in order for the more convenient use of carriages and passengers."

[8] The construction of said railroad in said highway would create an additional burden upon said highway, not for a street use, but for a municipal use or public use, and such additional burden cannot be placed upon said highway, either by the Legislature or by any other municipal authority, without making compensation therefor to the owners of property abutting upon said highway. · Williams v. New

York Central R. R. Co., 16 N. Y. 97, 69 Am. Dec. 651; Craig v. Rochester City & B. R. R., 39 N. Y. 404; Fobes v. R., W. & O. R. R. Co., 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453; Eels v. American T. & T. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640; Palmer v. Larchmont Elec. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672; Osborne v. Auburn Telephone Co., 189 N. Y. 393, 82 N. E. 428; and also Matter of Rapid Transit R. R. Commissioners, 197 N. Y. 81, 90 N. E. 456, 18 Ann. Cas. 366.

In Fobes v. R., W. & O. R. R. Co., 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453, the court, per Peckham, J., say:

"Such a use of the streets would be an additional burden upon the land, and, of course, if the adjoining owner had title in fee to the center of the street, subject only to the public easement, he would have a right of action, as held by the Williams and other cases. * * * If the use of either became unreasonable, excessive, or exclusive, or such as would not leave the passage of the street substantially free and unobstructed, then such excessive, improper, or unreasonable use would be enjoined, and the adjoining owner would be entitled to recover damages sustained by him therefrom, in his means of access, etc., to his land. Mahady v. B. R. R. Co., 91 N. Y. 149, 43 Am. Rep. 661." Washington Cemetery v. P. P. & C. I. R. R. Co., 68 N. Y. 591.

In Eels v. American T. & T. Co., 143 N. Y. 133, 38 N. E. 202, 25 L. R. A. 640, Judge Peckham, writing for the Court of Appeals, says:

"The primary or fundamental idea of the highway is that it is a place for uninterrupted passage of men, animals, or vehicles, and a place by which to afford light, air, and access to the property of abutting owners, who in this respect hold a greater interest in the street than the general public, even though their title to the land stops with the exterior line of the street. It is not a place which can be permanently or exclusively appropriated to the use of any person or corporation, no matter what the business or object of the latter may be."

In Palmer v. Larchmont Elec. Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672, Judge Haight says, in discussing the distinction between street uses and municipal uses:

"But there is a broad distinction between a municipal purpose and a street purpose. The primary object of highways is for public travel by persons and animals, and by carriages or vehicles used for the purpose of transportation of persons and goods, other than by railroads. Sewers drain the surface waters from highways, and thus relieve them from impairment and destruction. In this respect sewers are for a street purpose. In addition, they may drain also the abutting property and houses, and thus tend to promote the public health. In this respect they are for a municipal purpose. Water supplied by mains through the highways may be used for cleansing and sprinkling the streets. In this respect it is for a street purpose. It may be used by the abutting owners for cleansing and for domestic purposes, and is also used for the extinguishment of fires. In this respect it is for a municipal purpose. Light is, as we have seen, an aid to the public in the nighttime in traveling upon the highway. It is therefore used for a street purpose. All of the street purposes which we have referred to are clearly incident to the highway, and are deemed within the grant of lands for highway purposes whenever the necessity for these uses arises."

In Osborne v. Auburn Telephone Co., supra, the Court of Appeals adopted the language of Judge Haight in the Palmer Case, and as a result in that case held that the use of a street for municipal purposes or individual purposes, independent of its use for street purposes, is an ad-

140 N.Y.S.—53

ditional burden upon the fee not included in the grant of lands for highway purposes. They say:

"We are aware that in recent years our highways and streets have been appropriated for municipal and individual purposes in many instances. Subways, conduits, and pipe lines have been constructed for the transmission of electricity, steam, or other products for other than street purposes. Cities which own the fee in the streets may contract, lease, or grant their use for public or municipal purposes, not inconsistent with or prejudicial to the public easement or use for street purposes. In such cases, the fee having been transferred to the municipality, it can grant rights in the streets other than for street purposes which do not impair the public easement. We, therefore, cannot recognize the uses to which highways have been subjected in recent years as changing the law of property rights of individuals."

In one of the latest cases on this subject in the Court of Appeals, viz., the Joralemon Street Case (197 N. Y. 81, 90 N. E. 456, 18 Ann. Cas. 366), Judge Vann, writing the opinion, after quoting at length from the Palmer and Eels Cases, continues as follows:

"Therefore a use made of a street which does not help it as a highway for 'uninterrupted passage by men, animals, and vehicles' is not a street use, but is foreign to the purpose for which the street was created. Such a use was not within the contemplation of the original owner of the land, when he parted with the title thereto for a street, or gave a perpetual right of way over the same for the purposes of a street. The subway occupies a part of the street which, although beneath the surface, might by proper construction and change of grade be used for ordinary highway purposes and traveled upon freely without license or recompense by persons using their own vehicles or their own methods of transportation. The occupation of the subway and its trains of cars is exclusive, for no one may enter either without payment of fare. Highways are free and open to all the people; the subway is not. Highways are for the exclusive use of none; the subway is for the exclusive use of one. Highways are for travel by means under the exclusive control of the traveler; the subway is for travel by means under the exclusive control of its owner or operator. The result of the principle thus announced, as applied to the case in hand, is obvious. If the use were for a street purpose, the city would not be liable for damages caused by proper construction in any case where it took no land. * * * When, however, the construction is not for a street use, even if it is for a public use, liability to the owner of the fee attaches to a city the same as to a railroad corporation. From the Craig Case in 1868, to the Peck Case, in 1902, with a long line of cases intervening, the position of this court has been uniform and consistent in maintaining that surface structures and superstructures are an additional burden on the fee of the street. Craig v. Rochester City & Brighton Railroad, 39 N. Y. 404; Peck v. Schenectady Ry. Co., 170 N. Y. 298 [63 N. E. 357]."

[9] It is asserted in the moving affidavits, and not seriously denied by the defendants, that the railroad will be in operation for the space of from 18 months to 2 years, and, as has been noted, the proposed use during that period is unremitting. It can hardly be seriously contended that such a use of the highway would not have a tendency to empty houses of their tenants and to render it difficult to sell property along the street at its proper market value. The loss to the plaintiffs, resulting from the inability to sell or rent their property, would be difficult, if not impossible, of exact estimation in a court of law, and that furnishes an impelling reason why a court of equity should take cognizance of the question.

[10] The defendants contended on the argument that the method they proposed to adopt for the transfer of the excavated materials

from the subway to the bay was less injurious to the plaintiffs than the slower method of employing carts would be; but, whether that be so or not, the court should not exercise for the plaintiffs a choice of evils against their will.

The case cited by the defendants, Turl v. N. Y. Contracting Co., 46 Misc. Rep. 164, 93 N. Y. Supp. 1103, is wholly inapplicable to the case at bar. The fee of the street in that case was not in the abutting property owners, but in the city.

Motion granted, with costs.