EUGENE CLIFFORD POTTER, Appellant, *v.* CHARLES H. T. COLLIS, as Commissioner of Public Works of the City of New York; THE MAYOR, ALDERMEN and COMMONALTY OF THE CITY OF NEW YORK, Appellant; The EIGHTH AVENUE RAILROAD COMPANY and the METROPOLITAN STREET RAILWAY COMPANY, Respondents.

. 1. CITY OF NEW YORK — INABILITY IN 1851 TO AUTHORIZE CONSTRUCTION OF RAILROAD IN STREETS. The resolution of the common council of the city of New York, approved by the mayor July 30, 1851, undertaking to authorize certain individuals to construct a railroad in specified streets and avenues, which made up the greater part of the main line of the present Eighth Avenue Railroad Company, subsequently organized by such individuals, was beyond the power of the common council and void, whether considered as a grant of a franchise or as a license.

2. PROVISION FOR TRANSFER OF RAILROAD TO CITY. Such resolution having been void in its inception, the contract entered into by the individuals named therein with the city authorities, in consideration thereof, to transfer the railroad to the city whenever required so to do, on payment by the city of the cost of the road, with ten per cent advance thereon, failed for want of consideration, and it was not saved by chapter 140 of the Laws of 1854, relative to the construction of railroads in cities.

3. EIGHTH AVENUE RAILROAD COMPANY UNDER NO OBLIGATION TO TRANSFER ROAD TO CITY. Independently of and without giving any effect to chapter 478 of the Laws of 1874, requiring an extension of its road and regulating the operation thereof, the Eighth Avenue Railroad Company is not under a legal obligation to surrender, convey and transfer to the city of New York, whenever required so to do, the railroad built on the route described in the resolution of the common council approved by the mayor July 30, 1851, on payment by the city of the cost of the road with ten per cent advance thereon.

4. IDEM. Independently of and without giving any effect to chapter 478 of the Laws of 1874, the Eighth Avenue Railroad Company is not under obligation to surrender, convey and transfer to the city of New York the railroads built on the routes described in the resolution of the common council adopted December 13, 1852, extending its road.

5. CITY HAS NO RIGHT TO REQUIRE TRANSFER OF RAILROAD. Independently of and without giving any effect to chapter 478 of the Laws of 1874, the city of New York has not any legal right to require the surrender, conveyance or transfer to it of the said railroads, or either of them.

*Potter* v. *Collis,* 19 App. Div. 392, affirmed.

(Argued April 26, 1898; decided May 10, 1898.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 19, 1897, affirming an order of Special Term denying a motion for an injunction.

The nature of the action, the facts, so far as material, and the questions certified are stated in the opinion.

*Charles Henry Butler* for Eugene Clifford Potter, appellant. The plaintiff, as a taxpayer of the city of New York, is entitled to maintain this action, the object of which is fully within the scope of chapter 301 of the Laws of 1892 and of section 1925 of the Code of Civil Procedure. (*Starin* v. *Mayor, etc.,* 42 Hun, 549; 112 N. Y. 206, 209; *Peck* v. *Belknap,* 130 N. Y. 394; *Squire* v. *Preston,* 82 Hun, 88;

3

*Standart* v. *Burtis*, 46 Hun, 82; *Parfitt* v. *Ferguson*, 3 App.
Div. 176; *Armstrong* v. *Grant*, 56 Hun, 226.) All of the par-
ties defendant are properly joined, for, as the defendant rail-
road companies will reap the benefits of the illegal acts of
the defendant commissioner, it is proper that they should be
joined in order that the plaintiff as a taxpayer can have sub-
stantial relief; and even if the suit were brought in the inter-
est of any other person or to serve ulterior purposes, the plain-
tiff is entitled to maintain the action if any other taxpayer
could maintain it. (*Osterhoudt* v. *Bd. of Suprs.*, 98 N. Y.
239; *Latham* v. *Richards*, 15 Hun, 129; *Calhoun* v. *Mil-
lard*, 16 N. Y. S. R. 46; *Ramsey* v. *Gould*, 57 Barb. 398;
*Warrin* v. *Baldwin*, 105 N. Y. 534; *Central R. R. Co.* v.
*Collins*, 40 Ga. 582; *Mazet* v. *Pittsburgh*, 137 Penn. St. 548;
*McCune* v. *N. C. G. Co.*, 30 Conn. 521; *Bloxam* v. *Met. R.
Co.*, 3 Ch. App. 353; *Brockman* v. *City of Creston*, 79 Iowa,
587.) The acts which the plaintiff seeks to enjoin are not only
illegal, but also tend to cause waste and injury to the city's prop-
erty, and the court can enjoin the commission of the act and the
issuance of the permit on either or both of such grounds.
(*Adamson* v. *Union R. R. Co.*, 74 Hun, 3.) The defendant
commissioner of public works of the city of New York has
no right, in his official capacity, to do any act which in anywise
tends to alter existing contract relations between the city and
any of its licensees until the express consent of the city has been
properly obtained by such licensees. (*People ex rel.* v. *Thomp-
son*, 98 N. Y. 6; *People ex rel.* v. *Newton*, 112 N. Y. 396.)
The defendant railroad corporations have no right whatever
to operate the Eighth Avenue railroad, either as owners or
lessees, except under the franchise of 1851, and that franchise
has never been repealed, altered, modified, or in any way
affected by any subsequent legislation. (Ch. 140, L. 1854;
ch. 10, L. 1860; *Mayor, etc.*, v. *Second Ave. R. Co.*, 32
N. Y. 261.) The act of May 19, 1874, did not affect the fran-
chise of 1851 as a grant, or in any way alter any of the con-
tract rights or obligations of the city, or the licensees as between
themselves, but only made the Railroad Act applicable, so far

as this particular road is concerned, to the extent that the General Railroad Act does not conflict with the original franchise, and this is also *res adjudicata* under the judgment in the case of *Mayor, etc.,* v. *Eighth Ave. Railroad Company* to recover license fees. (43 Hun, 614; 118 N. Y. 389; 2 Van Fleet's Former Adjudication, 650, 795, 797; *Smith* v. *Smith,* 79 N. Y. 634; *Tuska* v. *O'Brien,* 68 N. Y. 446; *Jordan* v. *Van Epps,* 85 N. Y. 427, 436; *C., P. P. & M. Co.* v. *Walker,* 114 N. Y. 7, 12.) No legislative enactment, either general or special, has affected, or can affect, the rights of the defendant railroad corporations under the franchise of 1851, as the same is a contract between the city and the licensees, the obligation of which cannot be impaired or affected without violating the prohibition contained in the Constitution of the United States. (*Sinking Fund Cases,* 99 U. S. 700; *Fletcher* v. *Peck,* 6 Cranch, 87; *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Tomlinson* v. *Jessup,* 15 Wall. 454, 457; *New Jersey* v. *Yard,* 95 U. S. 104, 113; *Commonwealth* v. *Essex Co.,* 13 Gray, 239, 253; *Webb* v. *Mayor, etc.,* 64 How. 10; *People* v. *O'Brien,* 111 N. Y. 1.) The contract or franchise of September 6, 1851, was a valid, reasonable and proper contract, and the contention of the defendants that it was void and unreasonable, and that the city never intended to act upon it, is wholly without foundation. (*Mayor, etc.,* v. *Eighth Ave. R. R. Co.,* 7 App. Div. 86; *Davis* v. *Mayor, etc.,* 14 N. Y. 506; *Milhau* v. *Sharp,* 27 N. Y. 611.) There is no foundation whatever for the defendants' claim that the city has lost its right either to enforce the surrender clause or to control the motive power by inaction, *laches,* or any other manner; and no party in interest can claim that the city's exercise of its rights would be illegally injurious to any vested rights. (*Armstrong* v. *Grant,* 56 Hun, 226.) Any general statute which is a regulating statute must be controlled by the express stipulations of a prior special act, and, therefore, after the act of 1854 had confirmed the franchise of 1851 and continued the control of the road under the city of New York, no act of the legislature, including the act of

1874, as has been decided in 118 New York, or the amendment of 1889, which was then in force, could possibly affect the mutually vested rights and relations which had been established by the franchise. (Cooley's Const. Lim. 333; Black on Interp. of Laws, 116; Endlich on Interp. Stat. 216, 278; 3 Am. & Eng. Ency. of Law, 748, 749; *Green* v. *Biddle*, 8 Wheat. [U. S.] 84; *Edwards* v. *Kearzey*, 96 U. S. 594, 600; *Matter of Southern Boulevard R. R. Co.*, 58 Hun, 497.) The rule which is sometimes applied, to the effect that the regulation of municipal grants by subsequent legislation is not within the constitutional limitations, is not applicable to this case, as municipal corporations are as much protected by the prohibition against the impairment of obligations of contracts as are individuals if there are any vested property rights involved. (*People ex rel.* v. *Batchellor*, 53 N. Y. 128, 140, 141; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Webb* v. *Mayor, etc.*, 64 How. Pr. 10; 1 Dillon on Mun. Corp. §§ 60–70.) If the defendant commissioner is enjoined from issuing the permit during the pendency of the action, the court will only be directing him to pursue the usual course of the department, and, therefore, so far as the municipal defendants are concerned, no damage whatever can ensue. (*People ex rel.* v. *Thompson*, 98 N. Y. 6; *People ex rel.* v. *Newton*, 112 N. Y. 396; *Matter of Third Ave. R. R. Co.*, 121 N. Y. 536.) In deciding this motion the court will consider the fact that it is a controversy between the public and the defendant corporations whose rights are limited by their franchise, and that the rule of law in such cases is that the provisions of the franchise must be strictly construed in favor of the public and against the corporations, and, therefore, the injunction should be continued unless the rights of the defendant railroad companies are absolutely unquestionable, and if there is any doubt whatever as to those rights the motion must be decided in favor of the plaintiff as a taxpayer and the injunction continued. (*Dermott* v. *The State*, 99 N. Y. 107; *Mayor, etc.*, v. *B. & S. A. R. R. Co.*, 97 N. Y. 275; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Fertilizing Co.* v. *Hyde Park*, 97 U. S.

659, 666.)   The statements in the affidavits submitted by the
defendants have absolutely no bearing upon the question at
issue and do not show any reason for denying the motion to
continue the injunction, but, on the other hand, to a great
extent sustain the plaintiff's right to its continuance. (*People
ex rel.* v. *Thompson,* 98 N. Y. 6 ; *People ex rel.* v. *Newton,*
112 N. Y. 396.)   The situation is, therefore, that the city has
substantial rights under the contract, and no legislative enact-
ment has altered, or can alter, them, and the commissioner of
public works should be restrained from acting under an order
of any state board in such manner as will deprive the city of
the substantial benefits of the pending offers. (*Armstrong* v.
*Grant,* 56 Hun, 229.)

*Theodore Connoly* for the Mayor, etc., appellant.   The
answer to the first question certified must be in the affirmative.
(*Davis* v. *Mayor, etc.,* 14 N. Y. 506 ; *Milhau* v. *Sharp,* 27
N. Y. 622 ; *People ex rel.* v. *Sturtevant,* 9 N. Y. 263–273 ;
ch. 140, L. 1854 ; *Mayor, etc.,* v. *Eighth Ave. R. R. Co.,* 7 App.
Div. 84–86 ; 118 N. Y. 398 ; *Bath G. L. Co.* v. *Claffy,* 151 N.
Y. 26 ; *People* v. *O'Brien,* 111 N. Y. 1.)   Respondent's
contention that, by the passage of chapter 478, Laws of 1878,
the rights of the road were vested and it was released from
all obligations, except those imposed by the General Railroad
Act, is untenable. (*Mayor, etc.,* v. *Eighth Ave. R. R. Co.,*
43 Hun, 614 ; 118 N. Y. 389.)   The act of 1874, which
authorized the change of terminus of the defendant's route
in the defendant's interest, is to be construed liberally in favor
of the public and strictly against the grantee of the privileges
therein conferred. (*Mayor, etc.,* v. *Eighth Ave. R. R. Co.,*
43 Hun, 614 ; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129 ; *Der-
mott* v. *The State,* 99 N. Y. 107 ; *Mayor, etc.,* v. *B'dway &
Seventh Ave. R. R. Co.,* 97 N. Y. 281 ; *Charles River Bridge
Case,* 11 Pet. 420 ; *Oswego Falls Co.* v. *Fish,* 1 Barb. Ch.
547 ; *Thompson* v. *N. Y. & H. R. R. Co.,* 3 Sandf. Ch. 625 ;
*Mohawk Bridge Co.* v. *U. & S. R. R. Co.,* 6 Paige, 554 ;
*Cayuga Bridge Co.* v. *Magee,* 6 Wend. 85 ; *Auburn & Cato*

*P. R. Co.* v. *Douglass,* 9 N. Y. 444; *Fertilizing Co.* v. *Hyde,* 97 U. S. 659; *Newton* v. *The Commissioners,* 100 U. S. 561; *Rice* v. *A. & U. R. R. Co.,* 1 Black [U. S.], 358; *Stourbridge Canal Co.* v. *Wheeley,* 2 Brown & Ald. 792; *Gildart* v. *Gladstone,* 11 East, 685; *Kingston Dock Co.* v. *La Marche,* 8 Barn. & C. 42; *Leeds & Liverpool Canal* v. *Huster,* 1 Barn. & C. 424; *Priestly* v. *Foulds,* 2 Scott N. R. 205; *Portsmouth Bridge Co.* v. *Nance,* 6 Scott N. R. 823; *Barrett* v. *Stockton, etc., R. Co.,* 3 Scott N. R. 803; *Blackmore* v. *Glamorgan C. Co.,* 1 Mylne & K. 154; *Scales* v. *Pickering,* 4 Bing. 452; *R. & G. R. R. Co.* v. *Reid,* 64 N. C. 158; *Bradley* v. *N. Y. & N. H. R. R. Co.,* 21 Conn. 294; *Hartford Bridge* v. *Union F. Co.,* 29 Conn. 210; *Dugan* v. *Bridge Co.,* 27 Penn. St. 303; *Commonwealth* v. *E. & A. R. R. Co.,* 27 Penn. St. 339; *Allegheny* v. *O. & P. R. R. Co.,* 26 Penn. St. 355; *Commonwealth* v. *Central R. R.,* 52 Penn. St. 516; *Bridge Co.* v. *Hoboken Co.,* 13 N. J. Eq. 81; *Bowling Green R. R.* v. *Warren Co.,* 10 Bush [Ky.], 771; *Marion Savings Bank* v. *Dunkirk,* 54 Ala. 471; *Florida R. R. Co.* v. *P. R. Co.,* 10 Fla. 145; *Mayor, etc.,* v. *D. D., E. B. & B. R. R. Co.,* 112 N. Y. 140.) A cardinal rule in the interpretation of statutes is that the intention of the lawmakers is to control. (*People ex rel.* v. *Comrs. of Taxes,* 95 N. Y. 558; *People ex rel.* v. *Lacombe,* 99 N. Y. 43.) The act of 1874, interpreted in the light of the foregoing principles, does not relieve the defendant from the obligations of the original concession of its franchise. (*Matter of Kunst,* 101 N. Y. 193; *Mark* v. *The State,* 97 N. Y. 572.) If the act of 1874 be deemed to comprehend an intent to release the defendants from the conditions imposed by the terms of the original concession, it becomes to that extent unconstitutional. (*Sun Mut. Ins. Co.* v. *Mayor, etc.,* 8 N. Y. 253; *Town of Fishkill* v. *F. & B. R. Co.,* 22 Barb. 634; *People ex rel.* v. *Hills,* 35 N. Y. 449; *People* v. *O'Brien,* 38 N. Y. 193; *In re Lands in Flatbush,* 60 N. Y. 398; *Huber* v. *People,* 49 N. Y. 135; *People ex rel.* v. *Comrs.,* 53 Barb. 70; *People ex rel.* v. *Allen,* 42 N. Y. 404; *Gaskin* v.

*Meek*, 42 N. Y. 186; *Astor* v. *Arcade R. Co.*, 113 N. Y. 93; *Coxe* v. *The State*, 144 N. Y. 396; *People ex rel.* v. *Sturtevant*, 9 N. Y. 263; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611; *Mayor, etc.*, v. *Second Ave. R. R. Co.*, 32 N. Y. 261; *Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y. 330; *Fletcher* v. *Peck*, 6 Cranch, 87, 135; *People* v. *O'Brien*, 111 N. Y. 49; *Sinking Fund Cases*, 99 U. S. 700, 720; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Tomlinson* v. *Jessup*, 15 Wall. 454, 457; *New Jersey* v. *Yard*, 95 U. S. 104, 113; *Commonwealth* v. *Essex Co.*, 13 Gray, 239, 253; *Webb* v. *Mayor, etc.*, 64 How. 10.)

*James C. Carter* for Metropolitan Street Railway Company, respondent. The agreement of September 6, 1851, was void in its inception. No part of it relating to the conveyance and transfer of the Eighth Avenue Railroad Company to the city of New York was ratified or in any manner validated by the act of 1854. (*Davis* v. *Mayor, etc.*, 14 N. Y. 523; *Milhau* v. *Sharp*, 27 N. Y. 611.)

*Elihu Root, Wm. F. Sheehan* and *Bronson Winthrop* for Metropolitan Street Railway Company, respondent. The resolutions of July 30, 1851, do not undertake to do anything more than to give to the individuals named a personal, revocable license. The tracks authorized are to be taken up whenever the common council see fit. The parties licensed are prohibited from assigning their interests in the road without first obtaining the consent of the common council. The attempted grant was void. (*Davis* v. *Mayor, etc.*, 14 N. Y. 523; *Milhau* v. *Sharp*, 27 N. Y. 611.) The formation of a corporation under the consent of the September 3, 1851, resolutions and the September 6, 1851, agreement necessarily worked an abandonment of the previous personal agreements for a sale to the city, and no such obligation was ever imposed upon the corporation so formed. (*People* v. *O'Brien*, 111 N. Y. 1; ch. 140, L. 1850, § 28, subd. 5; *Matter of Kings County El. R. R. Co.*, 105 N. Y. 97; *Citizens' S. R.*

*Co.* v. *City R. Co.*, 64 Fed. Rep. 647; *Detroit R. Co.* v. *City of Detroit*, 64 Fed. Rep. 628; *Africa* v. *Knoxville*, 70 Fed. Rep. 729; *Matter of T. F. St. R. R. Co.*, 102 N. Y. 343.) Chapter 140, Laws of 1854, conferred upon the Eighth Avenue Company its present franchise subject to no obligation of sale to the city. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611; *People* v. *O'Brien*, 111 N. Y. 1, 38; *Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y. 330; *Mayor, etc.*, v. *Second Ave. R. R. Co.*, 32 N. Y. 261; *Sun Pub. Assn.* v. *Mayor, etc.*, 152 N. Y. 272; *Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144.) The conduct of all parties concerned in this grant affords strong evidence in support of the conclusion that no obligation to sell was understood to be imposed on the Eighth Avenue Railroad Company or to exist after 1854. (*Ins. Co.* v. *Dutcher*, 95 U. S. 269, 273; *Woolsey* v. *Funke*, 121 N. Y. 87; *Mayor, etc.*, v. *Eighth Ave. R. R. Co.*, 7 App. Div. 84.) Such a long-continued construction of a contract by all parties does not merely afford evidence of the true construction. It forbids the assertion of any other construction right or wrong. (*Reid* v. *Sprague*, 72 N. Y. 457.) The *laches* of the city is a bar to enforce the specific provision of the alleged contract. (*Catlin* v. *Green*, 120 N. Y. 442.)

*John M. Scribner* for the Eighth Avenue Railroad Company, respondent. The first three questions of law which the Appellate Division has certified for review by the Court of Appeals should be decided adversely to the municipal corporation, because, independently of the act of 1874, the Eighth Avenue Railroad Company is the absolute owner of the railroad and franchises in question, and the city of New York has no lawful right or authority to demand or require a surrender or transfer thereof to the city. (*Milhau* v. *Sharp*, 27 N. Y. 611; *Davis* v. *Mayor, etc.*, 14 N. Y. 506, 522; *People* v. *Kerr*, 27 N. Y. 209, 213; *Kellinger* v. *Forty-second St., etc., R. R. Co.*, 50 N. Y. 208; *Fanning* v. *Osborne*, 102 N. Y. 447; *Matter of T. F. S. R. R. Co.*, 102 N. Y. 350; *Potter*

*v. Collis,* 19 App. Div. 396 ; 1 Dillon on Mun. Corp. [4th ed.] § 71 ; *Abraham* v. *Meyers,* 29 Abb. [N. C.] 389 ; ch. 140, L. 1854 ; *Mayor, etc.,* v. *Eighth Ave. R. R. Co.,* 7 App. Div. 84 ; *Mayor, etc.,* v. *N. Y. & Harlem R. R. Co.,* 46 N. Y. S. R. 349 ; 139 N. Y. 643.)  The city cannot maintain an action for the specific performance of the alleged contract.  The Statute of Limitations is a bar.  (Code, §§ 381, 388, 410 ; *People* v. *O'Brien,* 111 N. Y. 38, 39 ; *People ex rel.* v. *Cassity,* 46 N. Y. 46 ; *Smith* v. *Mayor, etc.,* 68 N. Y. 556 ; *People ex rel.* v. *Comrs. of Taxes,* 80 N. Y. 576, 577 ; *People ex rel.* v. *Bd. of Assrs.,* 93 N. Y. 308 ; *People ex rel.* v. *Comrs. of Taxes,* 101 N. Y. 322 ; *Matter of Mayor, etc.,* 27 N. Y. S. R. 188 ; *People* v. *Preston,* 62 Hun, 185 ; 131 N. Y. 644 ; *People ex rel.* v. *French,* 13 Abb. [N. C.] 419 ; *Bruce* v. *Tilson,* 25 N. Y. 194 ; *Kelly* v. *Potter,* 16 N. Y. Supp. 446 ; *White* v. *City of Brooklyn,* 122 N. Y. 60 ; *Peabody* v. *Roberts,* 47 Barb. 103 ; *McCotter* v. *Lawrence,* 4 Hun, 110 ; *Peters* v. *Delaplaine,* 49 N. Y. 362 ; *Benedict* v. *Lynch,* 1 Johns. Ch. 370 ; *Butler* v. *Johnson,* 111 N. Y. 214 ; *McMullen* v. *Rafferty,* 89 N. Y. 458 ; *Catlin* v. *Green,* 120 N. Y. 441, 445 ; *Finch* v. *Parker,* 49 N. Y. 11.)  Specific performance will not be granted unless the parties seeking it act promptly.  (*Delavan* v. *Duncan,* 49 N. Y. 485, 486 ; *Mackall* v. *Casilear,* 137 U. S. 566 ; 1 Wood on Lim. 151 ; *Godden* v. *Kimmel,* 99 U. S. 201 ; *Speidel* v. *Kimmel,* 99 U. S. 210 ; *Hanner* v. *Moulton,* 138 U. S. 495 ; *Lansdale* v. *Smith,* 106 U. S. 392 ; *Sullivan* v. *Portland R. R. Co.,* 94 U. S. 811.)  By the act chapter 478, Laws of 1874, the legislature of this state, which had sole power (Ch. 10, L. 1860) to grant street railway franchises, conferred upon the Eighth Avenue Railroad Company practically a new charter for a term of 1,000 years.  (*Mayor, etc.,* v. *Eighth Ave. R. R. Co.,* 7 App. Div. 84.)

GRAY, J.  Certain questions have been certified to this court by the Appellate Division of the Supreme Court, in the first department, which have arisen upon the application for

an injunction during the pendency of this action. It was brought by a taxpayer, in the city of New York, to restrain the commissioner of public works of the city from issuing a permit to the defendant railroad companies to make excavations in the streets and to do what other necessary work is required, in order to change the motive power of the Eighth Avenue Railroad from that of horses to that of electricity. The application of the plaintiff was denied at the Special Term and its order to that effect has been affirmed by the Appellate Division.

The questions, which have been certified to us, relate to the construction of the Eighth Avenue Railroad in the city, under certain resolutions of the Common Council of the city of New York, and to the organization of a corporation under that name under certain acts of the legislature of the state. A statement of the facts in the history of this company can be briefly made and is necessary, in order that the questions certified may be intelligibly discussed. In July 1851, the Common Council of the city of New York adopted a resolution, whereby there was granted to John Pettigrew and his associates authority to construct a railroad in certain streets and avenues mentioned and which made up the greater part of the main line of the present Eighth Avenue Railroad Company. This resolution provided that, before it should have effect as authority to the parties, they should execute an agreement with the city, obligating themselves to perform its stipulations and provisions, and such as might be contained in other resolutions or ordinances relating to the road. Among the stipulations, mentioned in the resolution, was one requiring the parties "to file with the Comptroller, a statement, under oath, of the cost of each mile of road completed and to agree to surrender, convey and transfer the said road to the Corporation of the city of New York, whenever required so to do, on payment by the Corporation of the cost of said road, as appears by said statement, with ten per cent advance thereon." Another stipulation was that, on being required, they should "take up, at their own expense, the rails, or such

part thereof as should be required," or, upon their failure to do so, that the street commissioner might do it at their expense.    Another stipulation provided for license fees, to be paid annually upon the passenger cars on the road.    The contract, called for by the resolution, was executed, in September 1851, between the municipal authorities and the parties named in the resolution.    It recited the resolution and contained covenants on the part of Pettigrew and associates to perform all stipulations and conditions and, also, within ten days thereafter, to organize themselves into an association or company, to be called the Eighth Avenue Railroad Company.    After the execution of this agreement, other resolutions were adopted, which related to extensions of the road in and upon the streets; but none contained, or referred to, the condition in the first resolution, relating to the surrender and transfer of the road to the city, when required so to do.    The construction of the railroad was undertaken in 1852 and was continued until in the year 1854, when the legislature of the state passed a general act, "relative to the construction of railroads in cities." (Chap. 140, Laws of 1854.)    By section one, of the act, the Common Councils of the several cities of the state were prohibited from permitting the construction of street railroads within the city, without the consent thereto of a majority in interest of the owners of property upon the streets to be affected.    By section two, of the act, upon such consent being obtained, the Common Council of a city was authorized to grant the right to construct such a railroad " upon such terms, conditions and stipulations " as it may see fit to prescribe.    The grant, however, could not be made without a public advertisement for proposals.    By section three, it was provided that the act should not operate to prevent the construction, extension, or use of any railroad in any of the cities, which had already been constructed in part; and in such case, the " parties " or " companies " were authorized to complete and use such road " through the streets and avenues designated in the respective grants, licenses, resolutions or contracts, under which the same have been so, in

part, constructed, and to that end the grants, licenses and resolutions, aforesaid," were confirmed. In the following year, the Eighth Avenue Railroad Company was organized under the General Railroad Act of 1850 and under the above-mentioned act of 1854, for the term of one thousand years. Subsequently, and in 1874, the legislature passed an act, (Chap. 478 of the Laws of 1874), requiring the Eighth Avenue Railroad Company to further extend its railroad to Macomb's Dam bridge and providing, among other things, that " when the extension required by this act shall be completed and put into operation, the company shall use, maintain and operate its railroad during the term for which the company was incorporated, * * * subject only to the provisions of the General Railroad Act of this state with its amendments, which shall be applicable to the railroad and the extension hereby granted, except as herein provided."

In the light of these historical facts these questions were certified up to us; namely,

*First.* Whether, independently of and without giving any effect to chapter 478 of the Laws of 1874, on the facts, stated in the affidavits, the Eighth Avenue Railroad Company is under a legal obligation to surrender, convey and transfer to the corporation of the city of New York, whenever required so to do, the railroad built on the route described in the resolution of the common council approved by the mayor July 30th, 1851, on payment by the corporation of the city of the cost of said road with ten per cent advance thereon?

*Second.* Whether, independently of and without giving any effect to chapter 478 of the Laws of 1874, the Eighth Avenue Railroad Company is under obligation to surrender, convey and transfer to the corporation of the city of New York the railroads built on the routes described in the resolution of the Common Council adopted December 13th, 1852?

*Third.* Whether, independently of and without giving any effect to chapter 478 of the Laws of 1874, the city of New York has any legal right to require the surrender, conveyance or transfer to it of the said railroads, or either of them.

*Fourth.* Whether, if prior to the 19th of May, 1874, the Eighth Avenue Railroad Company was under obligation to surrender, convey and transfer the said railroads, or either of them, to the corporation of the city of New York, whenever required so to do, and the said corporation had the right to require such surrenders, conveyances and transfers, said obligation and right were terminated or suspended by force of chapter 478 of the Laws of 1874 and the Eighth Avenue Railroad Company's compliance with the requirements of the said act?

*Fifth.* If the Eighth Avenue Railroad Company is under obligation to make, and the city has a right to require, a surrender, conveyance and transfer of said railroads, or any of them, is the railroad company under obligation to surrender, convey and transfer, and has the city a right to acquire, the said railroad company's franchise to construct, maintain and operate a railroad on said routes, or any of them?

It was the claim of the plaintiff that the city would take over the franchise of the Eighth Avenue Company and could dispose of it to other parties upon very favorable terms, and that if these large expenditures are to be made in changing the motive power, the city will be obliged, in order hereafter to exercise its right to repurchase, to pay a much larger sum than now would be required.

The Appellate Division justices have rested their opinion, as to the relative rights of the city and the railroad company, upon a construction of the act of 1874. Mr. Justice INGRAHAM, speaking for that court, said " that whatever rights the city had, under the original resolution and contract of 1851, which were inconsistent with the grant of the act of 1874, were at least suspended during the period for which this company was, in express terms, authorized and directed to use, maintain and operate its road." They held that the effect of the act of 1874 was to suspend the right of the city to exercise the privilege, or option, claimed ; but they did not discuss the question if the city ever, really, acquired any such right ; or any rights at all, under the contract of 1851, unless

and as saved by the act of 1854. I think, while we may entirely agree with the Appellate Division in the view of the effect of the passage of the act of 1874, that the objection, or difficulty, is radical in the way of maintaining, on the part of the city, that the Eighth Avenue Railroad Company had come under a contractual obligation to transfer to it its road, whenever required to do so, upon the payment of the cost thereof with ten per cent added. It arose long before the passage of the act of 1874 and never was removed.

The resolution of the Common Council, in 1851, was void; inasmuch as it purported to do something not within the powers of that body. It undertook to authorize the laying of railroad tracks in the city streets and avenues and thus to subject them to new uses. But the title of the municipal corporation to the public streets was held in trust for the public and the power to regulate those uses was vested solely in the legislature. It might delegate that power, as any other appropriate power, to the municipal corporation ; but, without such delegation, any such act by the corporation, for not being within the strict or implied terms of its chartered powers, would be invalid. What the Common Council, or the Corporation, had attempted to grant to Pettigrew and his associates was a right to an exclusive interest in the streets, and that was beyond the power of either. It could not be sustained under any theory ; either of a franchise, or of a license. The Common Council could not divest the municipal corporation of that control over the streets, which was held by it in trust for the public. (*Davis* v. *Mayor*, 14 N. Y. 506; *Milhau* v. *Sharpe*, 27 (ib.) 611; *People* v. *Kerr*, 27 (ib.) 209; *Coleman* v. *Second Ave. R. R. Co.*, 38 (ib.) 201.) All that the municipal corporation could do, within the provisions of the General Railroad Act of 1850, was to assent to the construction of a railroad. At the time, however, it was not supposed that its provisions were sufficient to authorize a city street railroad. The situation of the city corporation, in the machinery of the state, was that of a mere agency; possessing no inherent and independent authority to create rights in others, which

affected the public interests.  It undertook to grant a right,
which, if effective, operated to invest private parties with an
exclusive interest in its streets.  This the legislature, possess-
ing a supreme authority over the public territory, within con-
stitutional limitations, could, of course, do ; but, to attribute
such a power to the municipal corporation, would be foreign
to the concept of such an administrative agency of govern-
ment.  Hence, the defense of the municipal action, in those
cases which came before the courts, was placed upon the
ground that it constituted a license.  But that attitude failed
to command any support in the decisions and the absence of
any such authority in municipal corporations may be said to
have been recognized and asserted by the legislature in the
passage of the Railroad Act of 1854.  As well say that the
creature could create, as to assert that such corporations, in
the guise of a license, could endow an association of persons
with rights and powers which would enable it to use the public
streets for private gain, to the same extent and with like effect,
as if possessing the franchise or privilege which the sovereign
power alone could grant.  Filling the capacity of a trustee
towards that portion of the public, it is clear that the only
power to modify the relation held by the city corporation, and
to increase the corporate authority, resided in the state, as the
creator of the corporation, acting through the legislative body.

The Common Council, then, being without power to confer
any such right under its resolution, the consideration for the
contract subsequently executed failed, and it was of no force
or effect; unless the act of 1854, in its intended operation
upon the parties, with their partly constructed road, preserved
it.  That I think, clearly, was not its effect.  The very pas-
sage of the act negatived the idea of any power in the cities
of the state to do what had been attempted to be done by the
resolution and contract of 1851.  It not being supposed that
the power to organize as a street railway within cities existed,
within the provisions of the General Railroad Act of 1850,
the enactment of the law of 1854 performed the function of
prescribing a uniform system, under which the cities of the

state might authorize the construction and operation of any such. It provided that, when the consent of a majority in interest of the property owners upon streets to be affected was obtained, the Common Council of the city, desirous of author izing the construction of a street railroad, might effect that purpose, upon such terms, conditions and stipulations as it saw fit to prescribe. But there remained still to be taken into account cases where street railroads had been partly constructed under the permission, in one form or another, of municipal authorities and the act made provision for them. In its third section, it authorized such roads to be completed, extended and used in, and through, the streets " designated in the grants, licenses, resolutions or contracts," and " to that end" confirmed " the grants, licenses and resolutions aforesaid ; " thus distinctly limiting the extent of the confirmatory action. It will be observed that while, by the language of the act, the legislature was willing to preserve the rights of parties, as attempted to be given in any way by the municipal corpora- tion, and under which they may have partly constructed street railroads, it was careful to define what, to the end that they might be completed, was confirmed ; namely, all " grants, licenses and resolutions." The absence of the word " con- tracts," in the confirmation by the legislature of what had been done, is significant. Under the strict interpretation which must be given to legislative acts, conferring franchises and defining the duties and obligations which accompany their grant, and which are owing, only, to the state and the public, the omission to confirm any previous contracts should be construed as a legislative intent that they should not be preserved. Nor was it at all necessary that they should be. All that had gone before was as naught ; saving and excepting that, in so far as the railroad had been partly constructed pursuant to the action of the municipal authorities, the right to construct, whether in the shape of grants, licenses, or resolutions, was confirmed. The franchise, or right, to use the city streets by Pettigrew and his associates had its origin in this act ; but, as an excep- tional case which was being provided for, the legislature

deemed it proper that any regulations imposed by the municipal authorities upon the operation of a street railroad should be continued. The "end," intended to be reached, in confirming the grants, licenses and resolutions, was, by the plain reading of the section, the construction, completion, extension and use of the road. They were confirmed to the end that the parties should be exempted from obtaining the consents of property owners and from compliance with other requirements of the act. That section was enacted in view of the invalidity of all that had been done, and the legislative intent must be construed in the light of the object in view. That was a beneficial purpose; granting the necessary right and validating the existing regulations. The only contract, therefore, under which the Eighth Avenue Railroad Company and its promotors came, was one with the state; the consideration for which was the recognition and grant of its right, and by reason of which they assumed just those liabilities and duties, which were to be read in, or implied, from it. When, in the following year, the Eighth Avenue Railroad Company became incorporated under the provisions of this act, as well as of the General Railroad Act, it held a charter from the state. It became the owner of the franchise therein conferred and was responsible only to the state for the fulfillment of the duty to operate its franchise during the continuance of the term, or period, specified. It is not to be reasonably supposed that the legislature conferred a franchise, which could, at some time, at the option of the municipal corporation, be surrendered to it.

If it were necessary for us to consider the effect of the insertion, in the resolution of 1851, of the provision as to a transfer of the road to the city, we should say that there was great reason to doubt that it was intended, thereby, that the city might become the owner of the road, at its option. The construction of street railroads was in the experimental stage and it is more reasonable to suppose that the insertion of that provision was intended as a measure of protection, in the event that the experiment should prove undesirable in the public interest. The city had neither franchises to confer upon parties

for the construction and operation of railroads; nor had it any power, under its charter, to maintain and operate such for itself. As a mere governmental agency, it had only such powers of administration, with respect to that portion of the public within its limits, as were expressly conferred, or as might be implied from and be incidental to the powers possessed. That this provision in the resolution was intended in the nature of a protection, simply, seems very evident; whether we consider the legal limitations upon the municipal power, or whether we consider the context. Immediately following it is the provision that, to the extent required, the parties constructing the road should take up at their own expense the rails; or, upon their failure to comply, the street commissioner might do so at their expense. It is, too, not without considerable significance that in subsequent resolutions, authorizing extensions upon other streets, there is no provision for any transfer to the city. An abandonment of the idea might well be inferred.

However that may be, I think the conclusion must be reached, upon a deliberate consideration of the question, that the Eighth Avenue Railroad Company never came under any legal obligation to surrender, or transfer, its railroad to the city of New York, whenever so required. Whatever grant of rights it acquired, it took through the act of 1854, and it acquired them freed from any condition, other than as imposed by that act, or by the General Railroad Act, or as might be contained in the regulations previously imposed and not inconsistent with its general grant of rights; the imposition of which was validated by the legislature, in order that there might be no exception, in its case, from the general rule applicable to all street railroads; which should thereafter be organized pursuant to its provisions.

It is argued that the question under consideration has been settled by the decision of this court, in the case of *Mayor, etc.,* v. *Eighth Ave. R. R. Co.* (118 N. Y. 389). Such an argument is in total misapprehension of the effect of that decision. That was an action to recover license fees from the

company; the payment of which had been refused, after the passage of chapter 478 of the Laws of 1874, upon the ground that, by the provisions of that act, the company had been relieved of any such obligation. Judge HAIGHT, who delivered the opinion in that case, stated that the question presented, upon the contention of the defendant, was whether it might operate its road, subject only to the provisions of the General Railroad Act and relieved of all conditions, not appearing therein. He proceeded in his opinion, very correctly, to show that no such result was intended by the legislature. He construed the provisions of the second section of the act of 1874, and reached the conclusion that it did not affect the right of the city to enforce the obligation which it had imposed, pursuant to the provisions of the General Railroad Act and its amendments, relating to the regulation or the operation of the road. The payment of license fees was not inconsistent with the grant of a franchise under the act of 1854, and did not come within the exception attached to the applicability of the General Railroad Law. In the course of the opinion, it was observed that the act of 1854 was the act under which the defendant was incorporated and took title to its property and franchises. In speaking of its confirmation of the " contract," the opinion, obviously, had reference to the contract which was under consideration; namely, the contract to pay license fees. That, as a condition of a grant which was invalid at the time, for want of power to make it, was rehabilitated by the provisions of the act of 1854.

The first, second and third questions should, therefore, be answered in the negative.

The fourth and fifth questions, I do not deem it necessary to discuss.

The order appealed from should be affirmed, with costs.

All concur, except PARKER, Ch. J., not sitting.

Order affirmed.