Richard S. Finkel Informal Opinion No. 2008-11 Town Attorney Town of North Hempstead Town Hall 220 Plandome Road Manhasset, New York 11030
Dear Mr. Finkel:
You have requested an opinion regarding whether a proposed transfer of parkland from the county of Nassau to the Town requires special state legislation. You have explained that the County proposes to transfer approximately 250 acres of developed and undeveloped parkland to the Town.[1] The agreement between the Town and the County provides that the deed for each park being transferred will provide that the transferred land will be "forever used and maintained as and for public park and public recreational purposes and for those purposes only," except for parking and ancillary structures necessary for operations consistent with public park and recreational purposes. The agreement further provides that "all Nassau County residents shall be allowed to use and enjoy the said premises at the same times and on the same terms and conditions as shall residents" of the Town. You have advised that county residents will retain the same rights of access to the park after the transfer that they currently have to the county park. You have asked whether under these specific circumstances alienation legislation must be enacted by the State Legislature in order for the transfer to occur.
Analysis
New York's longstanding common law public trust doctrine requires legislative approval for the alienation of or change in the use of parkland. Friends of Van *Page 2 Cortlandt Park v. City of New York, 95 N.Y. 2d 623, 630 (2001). Indeed, the doctrine has been codified for the special situation ofcity-owned parkland. See General City Law § 20(2) (city-owned parkland cannot be alienated); see also Matter of Central Parkway, 140 Misc. 727
(Sup.Ct. Sch'dy County 1931) (General City Law § 20(2) provides that a city's rights in a park are inalienable). Thus it is indisputable that legislative approval would be required for alienation of city-owned parkland, which is not at issue here.
There is a reasonable argument that the public trust doctrine should not apply here because, under the proposed agreement between the County and the Town, park purposes would be preserved, and access by all county residents also would be preserved. The rule is typically applied when parkland is diverted to non-park use. See, e.g., Kenny v. Bd. ofTrustees of Inc. Vill. of Garden City, 289 A.D.2d 534 (2d Dep't 2001) (use of park property for privately-operated assisted living facility required legislation); Johnson v. Town of Brookhaven, 230 A.D.2d 774 (2d Dep't 1996) (use of park property for private summer cottages required legislation); Ackerman v. Steisel, 104 A.D.2d 940 (2d Dep't 1984) (storage of city sanitation and highway department vehicles on city parkland required alienation legislation); aff'd, 66 N.Y.2d 833 (1985);Stephenson v. County of Monroe, 43 A.D.2d 897 (4th Dep't 1974) (use of parkland for landfill is non-park purpose that requires alienation legislation). The public trust doctrine has also been applied when members of the public who previously were able to use the park are restricted from using it. See Gewirtz v. City of Long Beach,69 Misc. 2d 763, 777-78 (Sup.Ct. Nassau County 1972) (town could not limit access to beach to town residents without express legislative authority when beach had previously been open to public at large); aff'd,45 A.D.2d 841 (2d Dep't 1974).
Because public parkland is held by a municipality in trust for the public, however, the power to regulate the use of that park property is "vested solely in the [L]egislature" and the local government alone cannot "divest the municipal corporation of that control." Potter v.Collis, 156 N.Y. 16, 30 (1898) (common council could not authorize laying of railroad tracks in city streets absent delegation of that power by Legislature because said streets were held in trust for public); cf. Lake George Steamboat Co. v. Blais, 30 N.Y.2d 48, 51-52
(1972) ("The ultimate control over the uses of public places is in the Legislature, and the only powers in this respect possessed by a municipality are derivative."). This lends support to the argument that even an intermunicipal transfer where parkland continues to be used for park purposes for the same members of the public requires legislative approval.
Moreover, a transfer of parkland from one municipality to another creates some risk that the use will change or access by previous users to the parkland will be *Page 3 
restricted.[2] An important safeguard against this risk is to subject the proposed transfer to legislative review and approval.
General Municipal Law § 72-h, authorizing local legislative bodies to transfer land to other governmental bodies, does not shed any light on this question. It expressly does not apply to real property that is made inalienable by general, special, or local law or charter. Id. § 72-h(2). Furthermore, it has been construed not to constitute the necessary specific legislative approval to alienate or divert parkland that is inalienable under the public trust doctrine. See Op. St. Comptr. No. 88-1; Op. St. Comptr. No. 65-623.
We have been unable to locate any judicial decisions involving intergovernmental transfers where full parkland use and access was to be preserved, so we cannot be confident how the courts will resolve this. Previous opinions of both this Office and the Office of the State Comptroller concluded that legislative approval was required in such circumstances. See 1967 Op. Att'y Gen. (Inf.) 132 (proposed transfer of parkland from village as single owner to same village and town as co-owners); 1954 Op. Att'y Gen. (Inf.) 74 (proposed transfer from village to State, with State continuing to maintain property as park);see also Op. St. Comptr. No. 59-426 (proposed transfer of parkland from village to town for use as town swimming pool).
Moreover, municipalities have sought and received legislative approval for such transfers. See, e.g, Act of Aug. 1, 2007, ch. 413, § 1, 2007 McKinney's N.Y. Laws 1011 (authorizing transfer of parkland from Nassau County to village of Flower Hill); Act of July 26, 2006, ch. 301, § 1, 2006 N.Y. Laws 3111 (authorizing transfer of parkland from Niagara County to town of Lockport); Act of Aug. 30, 2000, ch. 387, § 1, 2000 N.Y. Laws 3035 (authorizing transfer of parkland from village of Lancaster to town of Lancaster).
The State Office of Parks, Recreation and Historical Preservation has indicated that alienation legislation might not be needed for a transfer from one municipality to another, but recognizes that a definitive answer must come from a court. New York State Office of Parks, Recreation and Historical Preservation, Handbook on the Alienation and Conversion of Municipal Parkland 13 (rev. April 1, 2005).
Given this state of the law, we cannot confidently conclude that legislative approval is unnecessary. We therefore recommend that you seek such legislation before the transfer of parkland occurs, to avoid the risk that the transfer will be invalidated. *Page 4 
The Attorney General issues formal opinions only to officers and departments of state government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
KATHRYN SHEINGOLD Assistant Solicitor General In Charge of Opinions
[1] You have indicated that the County did not use federal or state funds to acquire the parkland at issue. Had such funds been used, statutes would have constrained the transfer of the property.See New York State Office of Parks, Recreation and Historical Preservation, Handbook on the Alienation and Conversion of Municipal Parkland 13-16 (rev. April 1, 2005) (state funding); id. at 25-28 (federal funding).
[2] These considerations might possibly weigh differently if the transfer were from a smaller to a larger unit of government, rather than the reverse as is true here. *Page 1