(46 Misc. Rep. 164.)

### TURL et al. v. NEW YORK CONTRACTING CO. et al.

(Supreme Court, Special Term, New York County. January, 1905.)

1. MUNICIPAL CORPORATIONS—STRUCTURES IN STREET—AUTHORIZATION.

The Legislature can authorize structures in streets for business convenience that, without such authority, would under the common law be considered obstructions, and may delegate such authority to the board of rapid transit commissioners of the city of New York.

2. SAME—RIGHTS OF ABUTTING OWNERS.

A corporation secured the right to construct a railroad and a terminal station between certain streets in New York, and contracted for excavation of the ground and construction of a retaining wall for the station. All the details of the proposed structure had been consented to and approved by the rapid transit commissioners of the city, and their permission given under the rapid transit act, as amended by Laws 1904, p. 1374, c. 564, § 33, to lay a tramway over the surface of certain streets for the purpose of the removal of excavated material. The president of the borough also gave the contractor permission to take up the pavement and excavate in a certain street for the purpose of constructing a temporary railway for the removal of the excavated material. Held, that a suit of an abutting owner suffering no damage on account of the erection of the tramway to restrain such erection would not lie.

3. INJUNCTION—TRAMWAY IN STREETS.

Where, in a suit to restrain the erection of a tramway in a public street, plaintiff had suffered no damage at the time an injunction pendente lite was granted, his application for a continuance of the temporary injunction under the same state of facts must be denied.

Action by Joseph H. Turl and others against the New York Contracting Company and Max Levington. Motion for permanent injunction. Denied.

Niles & Johnson, for plaintiffs.

James A. Deering, for defendant New York Contracting Company.

FITZGERALD, J. This motion is for a permanent injunction restraining the defendants "from erecting or proceeding with the erection of the wooden trestle or structure now being erected by them on Tenth avenue and on Thirty-Second street, westerly thereof, in the borough of Manhattan, either upon the roadbed, sidewalk, or other portion of the street."

From the complaint it appears that John Turl in his lifetime was the owner of the premises on the north side of Thirty-Second street, 300 feet east of Eleventh avenue, having a frontage of 100

feet on Thirty-Second street, said premises being known as Nos. 533, 535, 537, and 539 West Thirty-Second street, and was also the owner of certain other premises on the northerly side of Thirty-Second street, 100 feet west of Tenth avenue, having also a frontage of 100 feet on Thirty-Second street, known as Nos. 509, 511, 513, and 515 West Thirty-Second street. This John Turl died on or about May 24, 1892, leaving a last will and testament, which was duly admitted to probate by the surrogate of the county of New York on June 28, 1892, by which he devised the above-described property to his wife, Jeanette Turl, and to his son Joseph H. Turl and George H. Wyckoff, as trustees, to collect rents, issues, and profits thereof and pay the same to his wife during her life, with power to his trustees at the death of his wife to sell and dispose of this property and divide the same among his children. The children entitled to an interest in this property are Joseph H. Turl, Harry C. Turl, Margaret L. Parker, and Jeanette Cubberly. It appears from the affidavit submitted in opposition to this motion that Joseph H. Turl and Jeanette Turl, as trustees, on December 20, 1902, leased the premises Nos. 533 to 537 West Thirty-Second street to Gorham F. Smith for the term of 10 years from January 1, 1903, and that said Smith leased on January 1, 1903, to J. P. Sjoberg & Co., the second and third floors of these buildings for a term of 10 years. The premises Nos. 509 to 515 West Thirty-Second street are occupied by George C. Flint & Co. as a trim and furniture factory under an agreement or lease from the same trustees, which has several years to run. The Pennsylvania, New York & Long Island Railroad having secured the right to construct, operate, and maintain a railroad and for a terminal station between Seventh and Ninth avenues, Thirty-First and Thirty-Third streets, in the borough of Manhattan, city of New York, on or about June 21, 1904, entered into a contract with the defendant the New York Contracting Company-Pennsylvania Terminal, for the excavation of the ground and the construction of a retaining wall for the terminal station, the work to be completed in 20 months from the signing of the contract. The contracting company entered upon the performance of its contract, and has excavated and removed some of the material. There still remains to be excavated and removed 1,400,000 cubic yards, of which one-half is rock and one-half is earth and other materials. For the purpose of facilitating the removal of this material, the contracting company began the construction of a tramway from the terminal site at Ninth avenue through Thirty-Second street, on the southerly side thereof, to the pier at the foot of West Thirty-Second street. Plans showing the precise location and all the details of the proposed tramway structure were presented to the board of rapid transit commissioners for the city of New York, and on December 15, 1904, the rapid transit commissioners consented to and approved of the plans, and permission was given to the New York Contracting Company "to lay upon and over the surface of Thirty-Second street, between Ninth avenue and Twelfth avenue * * * and the intersecting avenues * * *, a temporary

tramway to be used for the removal of excavated materials from the terminal site." A copy of the plans before mentioned was submitted to the president of the borough of Manhattan on December 16, 1904, who thereupon issued a permit to said contracting company to open and use Thirty-Second street, between Ninth avenue and Twelth avenue, "and to remove the pavements and disturb the surface of said streets and avenues so far as the plans for the construction and maintenance of a temporary tramway to be used only for the removal of excavated material from and the transportation of material for use in the construction of the terminal station of the Pennsylvania, New York & Long Island Railroad Company between Thirty-First and Thirty-Third streets, Seventh and Ninth avenues, consented to and approved by the board of rapid transit commissioners of the city of New York on December 15, 1904." On July 29, 1904, the president of the borough of Manhattan issued a permit to the contracting company to take up the pavement and excavate such portion of Thirty-Second street, from Ninth avenue to the Hudson river, for the purpose of constructing a temporary railway in order to convey the excavated material from the site of the railway terminal to the North river. The defendant company claims that the plans referred to in this permit (July 29th) are substantially the same as the plans under which the contracting company has begun said temporary tramway, except for certain changes west of Tenth avenue. The erection of the tramway was commenced on or about November 24, 1904, and the work had proceeded to a point distant about 75 feet westerly from Tenth avenue, on the southerly side of Thirty-Second street, when on December 7th it was stopped by the injunction issued herein. The point where the work stopped was on the southerly side of Thirty-Second street, opposite a point 25 feet east of plaintiff's most easterly property. Up to that time it does not appear that plaintiff had suffered any damage on account of the erection of this structure.

In Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350, the court said, at page 189 of 109 N. Y., page 353 of 16 N. E.:

"He invoked equitable relief, and demanded a preventive remedy as the only one sufficient to rectify the evils of which he complained, and thus became subject to the practice of courts of equity, where such relief is administered, as the nature of the case and the facts as they exist at the close of the litigation demand."

Following the above doctrine, the facts as they existed on the return day (December 22d) must determine the relief to which the plaintiff is entitled.

The rapid transit act, as amended by chapter 564, p. 1374, Laws 1904, § 33, provides in part as follows:

"For the purpose of facilitating construction, and to diminish the period of occupancy of any street for the transportation of material, any contractor acting under a contract made in pursuance of this act, or of any act supplementary hereto or amendatory hereof, may, with the approval of the board of rapid transit railroad commissioners, lay upon or over the surface of any street temporary tramways, to be used only for the removal of excavated materials or the transportation of materials for use in the construction."

Section 391 of the Greater New York Charter (Laws 1901, p. 168, c. 466) provides that no removal of the surface or the pavement shall be made until a permit is first obtained from the president of the borough where the work is to be done. That the Legislature had power to delegate to the rapid transit commissioners the authority to warrant the construction of the tramway is, I think, well settled. In Hoey v. Gilroy, 129 N. Y. 132, 29 N. E. 85, the court said, at page 136 of 129 N. Y., page 86 of 29 N. E.:

"The Legislature, by virtue of its general control over public streets and highways, has the power to authorize structures in the streets for the convenience of business that, without such authority, and under the principles of the common law, would be held to be encroachments and obstructions."

It will thus be seen that the defendant company, having complied with the provisions of the statute, is armed with the necessary authority to construct a temporary tramway for the use stated in the certificate.

It is needless here to discuss the various objections made by the defendant as to the duty of the plaintiffs to bring in all the heirs and the tenants in possession under the leases, for, even assuming that the parties necessary were parties plaintiff, the sole question to be determined is as to the rights of the defendants to erect the structure complained of. Plaintiffs' contention that the erection of this structure, under the permit of July 29th, was without authority of law, even assuming such to be so, affords them no ground for complaint; his property was not injured. In a proper action plaintiff may recover such, if any, damages he may be in a position to prove, but the pending application for a continuance of the temporary injunction granted ex parte is denied.

Motion denied.